[No. 17005.   Department One.   October 6, 1922.]

*In the Matter of the Contempt of* NAOMI STEWART.[1]

CONTEMPT (30)—PUNISHMENT—IMPRISONMENT TO COERCE WITNESS —REFUSAL TO TESTIFY.   Where a witness refuses to answer, a judgment of contempt that she be committed until she answers, is not punitive or to be limited under Rem. Comp. Stat., § 1050, but is coercive and proper under Id., § 1059.

SAME (30).   A judgment of contempt committing a witness for refusal to answer, reciting the refusal when directed by the court to answer, sufficiently establishes the facts and the duty to answer.

WITNESSES (92) — PRIVILEGE — ANSWER TENDING TO INCRIMINATE WITNESS—PROVINCE OF COURT.   It is the province of the court, in the first instance to determine whether a direct answer would tend to criminate a witness by tending to show him guilty of crime; but if it appears that any answer would have such tendency, the witness is the exclusive judge as to whether his answer would in fact have such tendency.

SAME (92).   The record set out and held that no question propounded to the witness had any tendency to criminate her, so as to justify a refusal to answer.

Appeal from an order of the superior court for Walla Walla county, McCroskey, J., entered October 27, 1921, adjudging a party guilty of contempt of court.   Affirmed.

*H. B. Noland,* for appellant.

*Earl W. Benson,* for respondent.

[1]Reported in 209 Pac. 849.

Tolman, J.—On October 27, 1921, the case of State v. Opie Stafford being then on trial, appellant was called and sworn as a witness for the state. Before being examined, at the request of the prosecuting attorney, the jury was temporarily withdrawn and the prosecutor then made a statement to the court to the effect that there was then pending against the witness an information charging her with being a dependent or delinquent child (expressly saying that he was uncertain whether the charge was dependency or delinquency); that, in order to make her a witness for the state in the case then on trial, the state would, and then did, waive any right to prosecute the witness for any offense to which she might refer in her testimony, and a little later, and before her final refusal to testify, on motion of the state, the pending information (whatever it was) against the witness was dismissed.

From the beginning, counsel appearing for the witness and her mother and guardian only objected to the witness being required to testify. Being questioned by the court, the witness said she did not wish to testify, and that she had advised with counsel, who then appeared for her and at her request. Thereafter the jury having been recalled, the witness was placed upon the stand, answered questions as to her name and place of residence, and then, as disclosed by the record, the following occurred:

"Q. Are you acquainted with Opie Stafford? Mr. Noland: If the court please, on behalf of this witness I wish to object to the question and the answer upon the ground and for the reason that it tends to incriminate or may tend to incriminate the witness. She claims a right under the constitution and laws of the United States and the constitution and laws of the State of Washington not to make any answer to the question because it tends to or may incriminate her; and I now ask the court to inform the witness for such

reasons she is not required to answer. I make this objection on her behalf. The Court: The objection will be overruled. You may answer. Mr. Benson: Q. Are you acquainted with Opie Stafford? A. Yes. Q. Were you acquainted with Opie Stafford on or about the 28th day of October, 1920? Mr. Noland: We make the same objection and the same request on behalf of this witness. The Court: The objection will be overruled; she may answer. Mr. Benson: Q. Were you acquainted with him? A. Yes. Q. On or about the 28th day of October? 1920? A. Yes. Q. Where did you and Opie Stafford go on or about that time? Mr. Noland: If the court please, the same objection. The Court: Same ruling. Mr. Benson: Q. Where did you go on or about that time? A. I don't want to answer those questions. Q. What is that? A. I refuse to answer those questions. The Court: The court requires you to answer the question. A. We went—— Mr. Benson (interrupting): I would like to ask that Mrs. Peterson be excluded from the courtroom . . . Mr. Benson: I would like to have the question answered. The Court: She started to answer the question. A. We went to an undertaking parlors. Q. Before that, did you go to any sort of entertainment that evening? Mr. Noland: The same objection and the same request. The Court: The same ruling. A. We went to the carnival of the American Legion. I went there with some other people. Mr. Benson: Q. What time did you go down there that night? Mr. Noland: The same objection and the same request. The Court: The same ruling. A. We went down there—Oh, I don't know what time it was now. Mr. Benson: Q. Well, about what time? A. About eight o'clock. Q. Who were the other people in the party? Mr. Noland: Now the same objection and the same request. The Court: The same ruling. A. They were some people that lived up there near us. Mr. Benson: Q. How long did you stay at the American Legion? Mr. Noland: The same objection and the same request. The Court: The same ruling. A. Until about ten o'clock. I think it was. Mr. Benson: Q. Until about ten o'clock? A. Yes. Q. How old were you at that

time? Mr. Noland: The same objection and the same
request. The Court: She may answer. A. Sixteen.
Mr. Benson: Q. Sixteen years old? A. Yes. Q.
When is your birthday? Mr. Noland: Same objection.
The Court: Answer. A. The 23rd of April. Mr. Benson: Q. You were sixteen years old on the 23rd day
of April, 1920? A. Yes. Q. You then went to the undertaking parlors, you say? Mr. Noland: Same objection. The Court: Answer. A. Yes. Mr. Benson:
Q. What undertaking parlor? Mr. Noland: Same objection. The Court: Answer. A. McMartin & Hill.
Mr. Benson: Q. Where is the McMartin & Hill undertaking parlor, in what city? Mr. Noland: Same objection. The Court: Answer. A. City of Walla Walla.
Mr. Benson: Q. And county of Walla Walla? A. Yes.
Q. And State of Washington? A. Yes. Q. What time
did you get to the undertaking parlor? Mr. Noland:
Same objection. The Court: Answer. A. I refuse to
answer any more questions. The Court: The court
has decided that you must answer the question. Mr.
Benson: Q. What time did you get to the undertaking
parlors? Mr. Noland: Same objection. The Court:
She may answer. A. I wont answer any more questions. The Court: The court will have to say that you
are guilty of contempt of court if you refuse to answer
the questions when the court decides that you should
answer. The Witness: I won't answer any more questions. Mr. Benson: What time did you say? A. I
won't answer any more questions.''

Thereafter the witness persisted in her refusal to
answer any further questions, and an order was entered as follows:

''Be It Known, That on this 27th day of October,
1921, the above named court being in open session in
the court room of said court in the city of Walla Walla,
county of Walla Walla, state of Washington, engaged
in the trial of the case of the State of Washington,
plaintiff, v. Opie Stafford, defendant, to the court with.
a jury, and the above named Naomi Stewart, a female
of the age of seventeen years, being called as a witness
on behalf of the state, and having been duly sworn to·

testify in said cause on behalf of the state, questions were propounded to her by the prosecuting attorney of said county, which questions she refused in open court to answer; whereupon, the undersigned judge of said court, directed her to answer said questions, which she then and there repeatedly in the presence of the court and jury refused to answer.

"Whereupon, the judge of said court cautioned her that she would be guilty of contempt of court if she persisted in refusing to answer said questions, but she still refused to answer:

"That in so doing she was and is in contempt of court, and it is now adjudged by the court that she is in contempt of court for her refusal to answer the questions so propounded by the prosecuting attorney;

"It is therefore ordered and adjudged by the court that the said Naomi Stewart is guilty of contempt of this court for and on account of the matters aforesaid, and it is ordered by the court that she be committed to the custody of the juvenile department of the county of Walla Walla aforesaid until such time as she is willing and ready to answer the questions propounded to her as aforesaid by the prosecuting attorney."

The appeal now under consideration is from this order.

We will consider, first, the questions raised respecting the procedure. Appellant contends that, under Rem. Compiled Stat., § 1050, it not appearing from the record that the right or remedy of either party to the action in which she was called as a witness was defeated or prejudiced by her refusal to testify, she cannot be punished otherwise than by a fine not exceeding $100, citing *State ex rel. Dye v. Reilly*, 40 Wash. 217, 82 Pac. 287; *State ex rel. Curtiss v. Erickson*, 66 Wash. 639, 120 Pac. 104; and *Wright v. Suydam*, 79 Wash. 550, 140 Pac. 578. Conceding, without deciding, that this point is well taken, it is unavailing here because the order appealed from did not undertake to punish

appellant for the contempt found. The order was coercive only, and not punitive, and was no doubt made, and properly so, under the authority of Rem. Comp. Stat., § 1059, which reads as follows:

"When the contempt consists in the omission or refusal to perform an act which is yet in the power of the defendant to perform, he may be imprisoned until he shall have performed it, and in such case the act must be specified in the warrant of commitment."

It is also urged that the facts recited in the order are not sufficient to comply with the requirements of Rem. Compiled Stat., § 1051. While the section referred to would seem to be applicable to cases where punishment only is inflicted, and, as we have seen, this order inflicts no punishment, still, passing that, we think the facts recited are sufficient for the purposes of the order as made. The fact, and the only fact here involved, was the refusal of the appellant, when called as a witness, to answer questions propounded to her when directed so to do by the court. The court's direction to answer the questions establishes, so far as the mere matter of procedure is concerned, that it was the duty of the witness to answer, and the contempt lay in the refusal to perform that duty.

We come now to the main question involved, which is, Did the trial court err in that he directed the witness to answer questions the answers to which might tend to criminate her?

The state has favored us with no brief, but appellant suggests that the trial court may have had in mind Rem. Comp. Stat., § 2291, which reads:

"In every case where it is provided in this act that a witness shall not be excused from giving testimony tending to criminate himself, no person shall be excused from testifying or producing any papers or documents on the ground that his testimony may tend to

criminate or subject him to a penalty or forfeiture; but he shall not be prosecuted or subjected to a penalty or forfeiture for or on account of any action, matter or thing concerning which he shall so testify, except for perjury or offering false evidence committed in such testimony."

This section is a part of the criminal code of 1909 (Laws of 1909, p. 890), and the words "where it is provided in this act" relate to and are limited to that particular act which is ch. 249, § 39, p. 900, of the Laws of 1909. The information which was pending against appellant, and which was dismissed, as we have already mentioned, so far as the record discloses, was not brought under the criminal code, but probably under ch. 190, § 3, p. 669, of the Laws of 1909, or some later enactment upon the same subject. If the information charged delinquency, it may have been based upon the violation of any law of the state, or any city or town ordinance, and, if it charged dependency, it may have charged no offense whatever committed by the child, hence we cannot determine that appellant was granted immunity by the section quoted. Of course, the voluntary dismissal of the information was no bar to the subsequent filing of another information based on the same offense, and therefore, if the answers called for would or might tend to criminate the witness, the court erred in directing her to answer.

How shall it be determined whether or not the answers might tend to incriminate? The record does not inform us as to the nature of the charge against Opie Stafford then on trial, or whether appellant had been or might be charged with participation therein, though of course that was known to the trial judge. May the trial court, with its knowledge, determine whether the answers would tend to incriminate, or is that the privilege of the witness?

Chief Justice Marshall, in *United States v. Burr,* 25 Fed. Cas. 14,692e, p. 38, lays down the rule:

"The gentlemen of the bar will understand the rule laid down by the court to be this: It is the province of the court to judge whether any direct answer to the question which may be proposed will furnish evidence against the witness. If such answer may disclose a fact which forms a necessary and essential link in the chain of testimony, which would be sufficient to convict him of any crime, he is not bound to answer it so as to furnish matter for that conviction. In such a case the witness must himself judge what his answer will be; and if he say on oath that he cannot answer without accusing himself, he cannot be compelled to answer."

The modern rule seems to be very well defined in 28 R. C. L. 428, where it is said:

"14. Determination of tendency of answer to incriminate.—There are several English authorities which hold that a witness is the sole judge of whether answering a certain question asked would tend to incriminate him. There are also American authorities which seem to lean to the same view. However, the great weight of authority is to the contrary, and it is now settled, both in England and in this country, that it is the province of the court to determine in the first instance under all the circumstances of the case whether any direct answer to a proposed question has a tendency to criminate a witness, and, of course, it is the duty of the court, while it protects the witness in the due exercise of his privilege, to take care that he does not, under the pretense of defending himself, screen others from justice, or withhold evidence which he might safely give. Otherwise it would be in the power of every witness to deprive parties of the benefit of his testimony, by a merely colorable pretense that his answers to questions would have a tendency to implicate him in some crime or misdemeanor, or would expose him to a penalty or forfeiture, when it is clear that the questions have no such tendency. The court must be able to discern from the character of the ques-

tion and the other facts adduced in the case some tangible and substantial probability that the answer of the witness might help to convict him of a crime. Sometimes it may be difficult to discern the dividing line, but in all such cases the doubt should be solved in favor of the witness. Certainly, where the witness, on oath, declares his belief that the answer to the question would criminate or tend to criminate him, the court cannot compel him to answer, unless it is perfectly clear, from a careful consideration of all the circumstances of the case, that the witness is mistaken, or is acting in bad faith, and that the answer cannot possibly have any such tendency. For the purpose of this discussion a question that criminates, or tends to criminate, a witness may be defined as one the answer to which will show, or tend to show, him guilty of a crime for which he is yet liable to be punished.

"15. Actual Incriminating Effect of Answer; Papers.—If it appears that any direct answer to the question would have a tendency to incriminate the witness, he, according to the great weight of authority, is the sole and exclusive judge of whether the particular answer that he must give would in fact have a tendency to incriminate him. The court cannot participate with him in his judgment, because it cannot decide on the effect of his answer without knowing what it would be; and a disclosure of that fact to the judge would strip him of the privilege which the law allows, and which he claims."

We have examined many authorities upon this subject but nowhere find the rule better stated, and are convinced that it correctly reflects the great weight of authority.

We have quoted the entire examination of appellant as a witness in order that the test laid down by the authorities may be applied to each question asked, whether answered or not, and though having in mind the sacredness of the privilege asserted, we cannot, from the information afforded us by the record, say that any direct answer to any of these questions would

tend to criminate the witness.   Certainly the answers given present nothing which hints at guilt of any offense, and we can conceive of no answer to the question which appellant finally refused to answer which would form even a link in the chain of evidence which might convict her of crime.   The trial court with his greater knowledge, and no doubt having in mind the well established rule of law as herein quoted, and his duty under that rule, evidently was of the opinion that no possible direct answer could have tended toward the crimination of the witness, and the record presents nothing from which we are able to say that he erred.

Judgment affirmed.

PARKER, C. J., BRIDGES, FULLERTON, and MITCHELL, JJ., concur.