[No. 61788-1. En Banc. April 13, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. BRIAN JAMES HOBBLE, *Appellant*.

284

*Rita J. Griffith of Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney, Theresa Fricke, Senior Deputy,* and *Catherine Shaffer, Deputy,* for respondent.

BRACHTENBACH, J.* — Appellant Brian Hobble challenges a 30-day sentence for contempt, maintaining among other things that he was denied the right to a jury trial. We affirm.

Appellant and Steven Dow were charged with second degree burglary committed on February 10, 1991. Appellant pleaded guilty to attempted second degree burglary. In exchange for Appellant's testimony at Dow's trial, the State agreed to recommend a sentence at the low end of the standard range and promised not to file any additional charges resulting from the burglary incident.

At the time Appellant was arrested and gave the police a formal statement, he used a false name. He gave another

---

*Judge Robert F. Brachtenbach is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. 4, § 2(a) (amend. 38).

false name when he was booked. During pretrial proceedings in Dow's case, Dow's attorney argued that the defense was entitled to impeach Appellant with his use of an alias. The prosecutor refused to grant Appellant immunity for the use of an alias, and Appellant argued that in the absence of a grant of immunity sufficient to cover such testimony, he was entitled to assert a privilege against self-incrimination as to any testimony about his use of an alias.

The court ruled that Appellant had no privilege as to the use of an alias because the State had agreed not to prosecute, and rejected Appellant's counsel's argument that the privilege applied because Appellant's testimony under oath could be used for impeachment in the future or could lead to some possible, unspecified charge in the future.

The next day the matter came up again and Appellant's counsel advised the court he had found additional cases for the court's consideration. Since jury selection was scheduled for that day, the court set a hearing for the matter on the next court day.

At that hearing, the court stated that Appellant had transactional immunity with regard to what happened the night of the burglary, which included not only what he did, but what he said. In light of that immunity, the court could not see how Appellant could be in jeopardy for testifying as to the use of an alias. Counsel advised that there was concern about crimes which may not have been charged yet, but refused to elaborate. At that point, an in camera hearing was held. Appellant's counsel then argued that when people give aliases

> they may have done other things with that name, and my client's admission on the stand that he used a particular name can be brought back to haunt him down the road if other crimes are uncovered and his admission under oath to that name was used.
>
> . . . [H]e does have a fear that that would be used against him.

Verbatim Report of Proceedings (Aug. 5, 1991), at 6.

The court adhered to its original ruling.

During Dow's trial, the State asked Appellant about the formal statement he had made (under a false name) to police officers concerning what was going on the night of the burglary. Appellant testified that in his statement he told the officers that he had gone "down to this place to rip it off[,]" Verbatim Report of Proceedings (Aug. 2 and 5, 1991), at 30, but Appellant did not testify as to what he specifically told the officers because, he said, he could not remember. Upon further questioning, he agreed his memory was better on the night he was arrested, that he told the police what happened and about statements Dow made, that the police wrote down what he said, that he reviewed what they wrote, and that what they wrote was an accurate statement of what he said. However, when asked whether the statement before him was the one he had made to the officers, he refused to answer on the basis it might incriminate him. The court then informed Appellant that in light of his plea bargain and the State's agreement not to file additional charges arising from the incident of February 10, 1991, he was not in jeopardy in answering the State's questions.

When Appellant sought clarification, the court repeated the explanation that Appellant had been granted immunity, that any statement he made in connection with the burglary incident could not be the basis for additional charges and that his answers would not place him in jeopardy. The court directed Appellant to answer.

Despite the court's ruling, Appellant refused to answer questions about the statement. The trial court found him in contempt and advised him that appropriate sanctions in the form of jail time would be imposed at a later time.

On cross examination, defense counsel asked, "You promised the State you would testify truthfully, is that correct?" Appellant answered "Right". Verbatim Report of Proceedings (Aug. 2 and 5, 1991), at 37. Counsel next asked, "Doesn't testifying truthfully include owning up to whether or not you made a statement that night?" Verbatim Report of Proceedings (Aug. 2 and 5, 1991), at 37. Appellant refused to

answer the question, again asserting a right not to incriminate himself. The court again advised Appellant he was not in jeopardy in answering the question, and warned him that if he refused to answer he would be held in contempt. After defense counsel repeated the question, however, Appellant refused to admit the statement was his, and refused to answer questions about whether he gave police a false name the night of his arrest. Appellant was again held in contempt, with sanctions to be imposed later. Later during cross examination, the trial judge upheld Appellant's claim of privilege against self-incrimination when Appellant was questioned about other occasions when he and Dow might have acted together. (After Appellant testified, the court advised the jury of the parties' stipulation that Appellant's name is Brian Hobble, that when arrested he gave a false name, Vincent Kauder, and that he was booked under the name Vincent Mark Legari.

The court said that sanctions would be imposed at a later time in order to allow Appellant's counsel time to argue what kind of sanctions should or should not be imposed.

Dow's case went to the jury August 7, 1991. He was convicted, and was sentenced December 5, 1991. One week after Dow's case went to the jury, a hearing was held to determine sanctions for Appellant's contempt. Appellant's counsel asked the court not to impose sanctions, arguing that Appellant had legitimate safety concerns resulting from testifying against Dow (Appellant and Dow were incarcerated in the same facility); that Appellant's refusal to answer the questions was done in good faith; and that Appellant was not "particularly contemptuous in his conduct". Verbatim Report of Proceedings (Aug. 14, 1991), at 3. The court declined to reconsider its ruling.

Counsel then argued no sanctions were appropriate, given that the State was able to convict Dow and therefore there was no prejudice resulting from Appellant's refusal to answer.[1] Counsel also argued that the court was without authority to

---

[1]This argument is astonishing, as it completely ignores the possibility that in a given case a *defendant* might be prejudiced by a witness's refusal to testify.

impose sanctions because Appellant was not given the opportunity to purge the contempt, as counsel believed would be required in the case of a civil contempt, and there was no authority to find criminal contempt because no charges were filed against Appellant.

The court asked Appellant if there was anything which he wished to say, and Appellant responded "no".

The court acknowledged a gray area between civil and criminal contempt, but observed that this was a direct contempt, "a contempt of court right on during trial", and the court had the authority to adjudge Appellant in contempt. The court imposed a 30-day jail sentence to be served consecutive to any time Appellant was then serving. Defense counsel argued the sentence was a punitive sentence, which required a jury trial.

The court entered an order which stated that

> The above-entitled Court, having held a hearing to determine the sanctions for contempt of court for Brian Hobble's failure to respond to questions propounded during trial in this cause
>
> IT IS HEREBY ORDERED that Brian Hobble be sentenced to 30 days in the King County Jail consecutive to any time he is currently serving.

Clerk's Papers, at 4. On September 10, 1991, the court stayed the sentence pending appeal. Division One certified the appeal to this court, which accepted certification.

In 1989, the Legislature passed new laws respecting contempt, RCW 7.21. This is a case of first impression under the new statutes. "Contempt of court" includes "intentional: . . . Refusal as a witness . . . without lawful authority, to answer a question . . .." RCW 7.21.010(1)(c).

The first question is whether Appellant's claim of the privilege against self-incrimination is a claim of lawful authority to refuse to answer questions about his use of an alias.

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself". This privilege includes the right of a witness not to give incriminating answers in any proceeding. *Kastigar v.*

*United States*, 406 U.S. 441, 32 L. Ed. 2d 212, 92 S. Ct. 1653, *reh'g denied*, 408 U.S. 931, 33 L. Ed. 2d 345, 92 S. Ct. 2478 (1972). The state constitution provides that "[n]o person shall be compelled in any criminal case to give evidence against himself . . .". Const. art. 1, § 9.

> To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim "must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence."

*Seventh Elect Church v. Rogers (Gina Rogers)*, 34 Wn. App. 105, 114, 660 P.2d 280 (quoting *Hoffman v. United States*, 341 U.S. 479, 486-87, 95 L. Ed. 1118, 71 S. Ct. 814 (1951)), *review denied*, 99 Wn.2d 1019 (1983).

■■ The danger of incrimination must be substantial and real, not merely speculative. *See United States v. Apfelbaum*, 445 U.S. 115, 128-29, 63 L. Ed. 2d 250, 100 S. Ct. 948 (1980); *State v. Parker*, 79 Wn.2d 326, 332, 485 P.2d 60 (1971) (must appear to be genuine, not fanciful or illusory, in order to overcome correlative duty to the court and litigants to testify to the truth). Unless the answer to a question would obviously and clearly incriminate the witness, the witness "must establish a factual predicate from which the court can, by use of 'reasonable judicial imagination' (aided by suggestions of counsel), conceive of a sound basis for the claim." *Eastham v. Arndt*, 28 Wn. App. 524, 531-32, 624 P.2d 1159 (quoting *Thoresen v. Superior Court*, 11 Ariz. App. 62, 66, 461 P.2d 706 (1969)), *review denied*, 95 Wn.2d 1028 (1981). The answer need only "furnish a link in the chain of evidence needed to prosecute the witness for a crime." *Seventh Elect Church v. Rogers (Gerald Rogers)*, 34 Wn. App. 96, 100, 660 P.2d 294, *review denied*, 99 Wn.2d 1019 (1983); *accord Kastigar*, at 444-45 (disclosures which could lead to other evidence which might be used in a criminal prosecution).

"[T]he power to decide whether the hazards of self-incrimination are genuine and not merely illusory, speculative, contrived or false, must rest with the trial court before whom the witness is called to give evidence." *Parker*, at 332. The determination whether the privilege applies lies within the sound discretion of the trial court under all the circumstances then present. *Parker*, at 332; *State v. Lougin*, 50 Wn. App. 376, 382, 749 P.2d 173 (1988).

■ However, "a witness may be compelled to give testimony which may incriminate him [or her] if, at the same time, he [or she] is given coextensive immunity from prosecution for crimes to which the testimony relates." 13 Royce A. Ferguson, Jr., Wash. Prac., *Criminal Practice and Procedure* § 3311, at 263 (1984) (citing *Ullmann v. United States*, 350 U.S. 422, 100 L. Ed. 511, 76 S. Ct. 497, 53 A.L.R.2d 1008, *reh'g denied*, 351 U.S. 928, 100 L. Ed. 1457, 76 S. Ct. 777 (1956); *State v. Hull*, 78 Wn.2d 984, 481 P.2d 902 (1971)).

Here, counsel's explanations to the trial court at the in camera hearing were vague and speculative. Counsel refused to provide any basis for the privilege other than Appellant's fear that an admission on the stand about the use of an alias could be brought back to "haunt him" on down the road if some possible unspecified crime were uncovered at some unspecified time in the future.

Under the circumstances then present, the trial court did not abuse its discretion in ruling that the privilege against self-incrimination did not provide Appellant lawful authority to refuse to answer questions about his use of an alias.

■ In his appellate brief, Appellant says that many theft or "forgery-type" crimes could depend upon proof that the alias in question was used by him, and that an admission under oath that he used the alias could be used to link him to other crimes and could serve as a basis for expert testimony comparing his signature on the statement he gave the police to other signatures using the alias. Br. of Appellant, at 24 n.5. Aside from the question whether these sug-

gestions, too, are too speculative for invocation of the privilege, which appears to be the case, these particular suggestions were not made to the trial court. Instead, immediately before the in camera hearing was held, when Appellant's counsel raised the concern about other possible crimes, the court asked "Such as?" Verbatim Report of Proceedings (Aug. 5, 1991), at 3. Counsel responded he could not reveal too much. Then, when the in camera hearing followed immediately, counsel refused to offer any further basis for asserting a claim of privilege.

The trial court did not err in ruling that Appellant did not have a right to refuse to testify.

■ The trial court did not specify the basis for its contempt order. A finding of contempt will be upheld, though, "as long as a proper basis can be found." *State v. Boatman*, 104 Wn.2d 44, 46, 700 P.2d 1152 (1985). The authority to impose sanctions for contempt may be statutory, or under the inherent power of constitutional courts.

The new Washington statutes on contempt define contemptuous conduct without distinguishing between civil and criminal contempt; instead, a distinction is now drawn between punitive and remedial sanctions for contempt. A "punitive sanction" is "a sanction imposed to punish a past contempt of court for the purpose of upholding the authority of the court." RCW 7.21.010(2). A "remedial sanction" is "a sanction imposed for the purpose of coercing performance when the contempt consists of the omission or refusal to perform an act that is yet in the person's power to perform." RCW 7.21.010(3).

It is not disputed that Appellant's adjudication of contempt cannot be upheld under the remedial sanctions provision of RCW 7.21.030, because his punishment was imposed after the end of the criminal trial and he was therefore not able to "purge" the contempt, *i.e.*, there was no coercive purpose of the punishment. Nor can the contempt adjudication be upheld under the punitive sanctions provisions in RCW 7.21.040, which permits fines up to $1,000 or jail terms for not more than 1 year, or both. RCW 7.21.040(2)(a) requires that "[a]n action to impose a punitive sanction for

contempt of court shall be commenced by a complaint or information filed by the prosecuting attorney or city attorney". Moreover, the statute contemplates a trial of the contemnor.

However, both the remedial and punitive sanctions statutes contain an exception to compliance with their provisions, if the contempt falls within the provisions of RCW 7.21.050. RCW 7.21.050 provides for summary imposition of sanctions for a "direct contempt", one committed in the courtroom.[2] Both punitive and remedial sanctions are authorized for direct contempt. RCW 7.21.050. Summary sanctions may only be imposed "if the judge certifies that he or she saw or heard the contempt" and "only for the purpose of preserving order in the court and protecting the authority and dignity of the court." RCW 7.21.050(1).

Summary punishment has long been allowed in Washington for direct contempt. *E.g., State v. Buddress*, 63 Wash. 26, 114 P. 879 (1911); Code of 1881, § 727 (contempt in the immediate view and presence of the court may be punished summarily).[3]

■ Appellant claims, however, that the contempt cannot be upheld under the summary procedures statute for several reasons. First he argues that he lawfully claimed privilege to refuse to answer, as discussed above. Second, he maintains that his conduct was not disruptive, disrespectful, disorderly, boisterous, rude or insolent, and therefore was not the type of behavior subject to summary contempt proceedings. RCW

---

[2]An indirect contempt is "contumacious behavior occurring beyond the eye or hearing of the court and for knowledge of which the court must depend upon the testimony of third parties or the confession of the contemnor." *United States v. Marshall*, 451 F.2d 372, 373 (9th Cir. 1971).

[3]Under prior law, former RCW 9.23.010 pertained to criminal contempt and former RCW 7.20 pertained to civil contempt. Independent of statutory authority was [and is] the "inherent power to punish for contempt derived from the constitutional origin of the court." *State v. Caffrey*, 70 Wn.2d 120, 122, 422 P.2d 307 (1966). "Both the common law and the general statute [RCW 7.20] authorize[d] summary punishment if contempt [wa]s committed in the presence of the court." *Caffrey*, at 122. Summary contempt proceedings under RCW 7.21.050 are generally consistent with prior law, and cases decided under prior law involving direct contempt may be illustrative under the new statute.

7.21.010(1)(c), providing that intentional refusal to answer questions as a witness is contempt, does not require such behavior. RCW 7.21.050(1), providing for summary proceedings, says that the contempt must occur in the courtroom, and that sanctions may be imposed "only for the purpose of preserving order in the court and protecting the authority and dignity of the court." This statute also does not refer to behavior of the type Appellant says must occur for summary proceedings to be proper.

Further, a refusal to answer questions as a witness is the kind of behavior for which summary contempt proceedings are appropriate. *United States v. Wilson*, 421 U.S. 309, 44 L. Ed. 2d 186, 95 S. Ct. 1802 (1975). In *Wilson*, the Court was faced with the question whether a district court could impose summary contempt punishment under Fed. R. Crim. P. 42(a) when witnesses who had been granted immunity refused to testify on Fifth Amendment grounds. In discussing whether the refusals to answer fell within the rule, the Court said:

> The refusals were contemptuous of judicial authority because they were intentional obstructions of court proceedings that literally disrupted the progress of the trial and hence the orderly administration of justice. Respondents' contumacious silence, after a valid grant of immunity followed by an explicit, unambiguous order to testify, impeded the due course of [defendant's] trial perhaps more so than violent conduct in the courtroom. Violent disruptions can be cured swiftly by bodily removing the offender from the courtroom, or by physical restraints and the trial may proceed. But as this case demonstrates, a contumacious refusal to answer not only frustrates the inquiry but can destroy a prosecution. Here it was a prosecution; the same kind of contumacious conduct could, in another setting, destroy a defendant's ability to establish a case.
>
> The face-to-face refusal to comply with the court's order itself constituted an affront to the court . . . ..

(Footnotes and citations omitted.) *Wilson*, at 315-16. We agree with this reasoning. Appellant's contemptuous conduct clearly conflicted with the maintenance of order in the court and the conduct of Dow's trial and was manifestly offensive to the authority and dignity of the court.

Appellant also argues that the trial judge did not follow the procedures in RCW 7.21.050. Appellant says the order does not recite that the contempt was seen or heard by the judge and does not recite the facts of the contempt, as required by RCW 7.21.050(1).

■ The order does not expressly state that the trial judge saw or heard the contempt. However, under prior statutes, which similarly required that if the contempt consisted of acts done in the immediate view and presence of the court, the judgment had to so recite, this court concluded that the requirement was satisfied where "the only reasonable construction of the language of the order, read as an entirety, is that the unseemly acts recited were done in the face of the court." *Buddress*, at 30. (The court said the words of the former statute "in the immediate view and presence" of the court were equivalent to the common law phrase "in the face of the court". *Buddress*, at 29.)

Here, the order states that the conduct constituting the contempt of court consisted of "Brian Hobble's failure to respond to questions propounded during trial in this cause". Clerk's Papers, at 4. The only reasonable construction of this language is that Appellant's failure to answer occurred within the course of the trial, in the presence of the judge, and within his sight and hearing.

As to the requirement that the order recite the facts of the contempt, it is true that the description in the order is brief, but the salient fact, that Appellant's contempt consisted of failure to answer questions as a witness, is set forth. Admittedly, this statement of the facts is the bare minimum which could possibly suffice; nonetheless, we conclude the statute is not violated.

■ However, to avoid any question about the sufficiency of a factual recitation in an order of contempt, we advise trial courts to provide a thorough description of the relevant facts sufficient in law to show contempt. Historically, upon an appeal from a judgment of contempt committed in the court's presence, the facts recited in the order are taken as

true. *In re Willis*, 94 Wash. 180, 183, 162 P. 38 (1917); *Buddress*, at 32.

Appellant also says that the trial court did not comply with RCW 7.21.050(1)'s requirement that the court give the contemnor the opportunity to speak in mitigation of the contempt, reasoning that the court refused to consider counsel's arguments in mitigation. At the sentencing hearing the trial court asked Appellant if he wished to say anything, and Appellant declined to speak. Appellant's counsel presented arguments in mitigation. The requirement is satisfied.

Moreover, we note that the trial court carefully acted throughout these proceedings to protect any valid claim of privilege enjoyed by Appellant. In pretrial proceedings, as well as in an in camera hearing, Appellant was given every opportunity to try to establish a valid basis for refusal to testify about his use of an alias. When Appellant asserted a valid basis for asserting the right not to incriminate himself, the trial court ruled he did not have to answer; for example, when appellant was questioned about possible other activity he and Dow had engaged in.

Appellant argues that the punishment was not summary. The contempt adjudication was made promptly upon Appellant's refusal to testify. The jail time was imposed at a separate sentencing hearing held 1 week after Dow's case went to the jury. RCW 7.21.050(1) states that "[t]he judge shall impose the sanctions immediately after the contempt of court or at the end of the proceeding".

At the time the sentence for contempt was imposed, the proceedings had not ended. Dow's criminal proceedings were not complete until they ended in a judgment and sentence, on December 5, 1991. Imposition of the sentence for contempt 1 week after the case went to the jury was timely under the statute.

In this regard, it is significant that the adjudication of contempt was promptly made upon Appellant's refusal to answer, and the trial court delayed imposition of the sentence for the stated purpose of allowing Appellant's counsel

an opportunity to argue about the sanction to be imposed. The period of time between the adjudication of contempt and imposition of the sentence, given these circumstances, and the fact that Appellant was already incarcerated on other grounds, does not lessen the effect of a prompt determination of contempt on the contemnor, others in attendance at the trial, and the general public, in vindication of the trial court's authority.

Moreover, an aspect of the contempt power for contempt committed in the presence of the court which has long been recognized by this court is the judge's personal knowledge of the offensive conduct occurring in his or her presence. When contempt occurs in the presence of the court, "[t]here is no prosecution, no plea, nor issue upon which there can be a trial.'" *State v. Buddress*, 63 Wash. 26, 32, 114 P. 879 (1911) (quoting *Ex parte Terry*, 128 U.S. 289, 308-09, 32 L. Ed. 405, 9 S. Ct. 77 (1888)). The facts of the contempt were not subject to dispute.[4] Under the circumstances of this case, there was nothing to be lost by the delay between the adjudication and imposition of the sentence, and the time gained was to Appellant's benefit as it allowed preparation of argument on appropriate sanctions.[5]

■ Appellant argues that he was entitled to a trial by jury because the trial court imposed a determinate jail sentence, which, Appellant claims, constitutes criminal punishment. Initially, he has no such right under the United States Constitution. A jury trial is not required under the federal constitution for petty offenses. Where incarceration is the punishment, a jury trial is required only in the case of a jail

---

[4]The contempt consisted of refusing to answer after the judge ruled Appellant's claim of privilege was not valid. The propriety of the ruling on the claim of privilege is a separate issue. Here, the trial court stayed enforcement of the contempt order until appellate review, including review of the claim of privilege, is complete. *See* 15 Lewis H. Orland & Karl B. Tegland, Wash. Prac., *Trial Practice — Civil* § 633, at 173 (Supp. 1994) (citing *State v. Sheppard*, 52 Wn. App. 707, 763 P.2d 1232 (1988)).

[5]We note there was a 1-week delay in entry of an order of contempt in *Bud-dress*, and that summary contempt sanctions for direct contempt were upheld.

term in excess of 6 months; this principle applies in the case of criminal contempt. *Bloom v. Illinois*, 391 U.S. 194, 20 L. Ed. 2d 522, 88 S. Ct. 1477 (1968); 3 Charles A. Wright, *Federal Practice* § 712 (1982). The Court in dictum in *Bloom* said no different rule applied in the case of direct contempt. *Bloom*, at 209-10.

Appellant argues that the state constitution provides greater protection in this context than does the federal constitution, and appears to reason that the question has already been resolved by this court. The State argues that under the criteria of *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986), the state constitutional right to a trial by jury in the context of direct contempt is no greater than that under the federal constitution.[6]

Const. art. 1, § 21 provides: "The right of trial by jury shall remain inviolate, but the legislature may provide for a jury of any number less than twelve in courts not of record . . .". Const. art. 1, § 22 (amend. 10) provides "[i]n criminal prosecutions the accused shall have the right . . . to . . . trial by an impartial jury . . .".

■■■ The right to trial by jury under the Washington State Constitution is not coextensive with the federal right. Applying the *Gunwall* analysis, the court has held that the state constitution affords no greater right to trial by jury for juveniles than does the federal constitution. *State v. Schaaf*, 109 Wn.2d 1, 743 P.2d 240 (1987). In contrast, the court also has held that the state constitution provides the right to trial by jury in the case of any adult criminal offense, even petty offenses, and thus provides broader protection in that context than does the federal constitution. *Pasco v. Mace*, 98 Wn.2d 87, 96, 653 P.2d 618 (1982).

Appellant relies heavily upon *Pasco*, and upon contempt cases decided by this court arising after *Pasco*. However, what Appellant has failed to appreciate is that those cases

---

[6]Both parties have submitted additional briefing on the state constitutional right to trial by jury as this court requested during oral argument. Appellant has not briefed the *Gunwall* criteria, perhaps because, as noted, Appellant believes the issue is already resolved.

concern indirect contempt, not direct contempt and summary mary contempt procedures. As this court cautioned long ago, cases involving indirect contempt are not on point where direct contempt is involved. *In re Willis, supra* at 186. *Pasco* and the later cases cited by Appellant simply did not address the state constitutional right to a jury trial in the context of direct contempt.

In *Pasco*, the court noted that Const. art. 1, § 21 "preserves the right as it existed at common law in the territory at the time of its adoption." *Pasco*, at 96. Then, in deciding whether there was a right to trial by jury in the case of petty offenses (misdemeanors), the court held there was a right to trial by jury because when the state constitution was adopted, misdemeanors as well as violations of municipal ordinances were tried in justice courts, and the Code of 1881, which was in effect and had been for several years before adoption of the constitution, provided for a jury in all trials for offenses within the jurisdiction of the justice of the peace. *Pasco*, at 97-99.

The court said "[i]t is our conclusion that, under the concept embodied in the constitution of Washington, enacted as it was in light of the laws of the territory existing at that time, no offense can be deemed so petty as to warrant denying a jury if it constitutes a crime." *Pasco*, at 99. "As for those offenses which carry a criminal stigma and particularly those for which a possible term of imprisonment is prescribed, the constitution requires that a jury trial be afforded unless waived." (Footnote omitted.) *Pasco*, at 100.

In *State v. Browet, Inc.*, 103 Wn.2d 215, 691 P.2d 571 (1984), decided before RCW 7.21 was enacted, the court reasoned, in accord with prior cases, that a contempt proceeding which is punitive, results in a determinate sentence, and affords the defendant no opportunity to purge himself of the contempt is a criminal contempt; a criminal contempt was a misdemeanor under former RCW 9.23.010; and, under *Pasco*, any offense for which a determinate sentence is authorized is a crime, and any crime warrants a jury trial. Accordingly, the court held that RCW 7.48.080, which authorized courts

to summarily try and punish, for contempt, violations of injunctions granted under RCW 7.48.050 through .100, was unconstitutionally applied where the contemnors were not afforded a jury trial.

In *State v. Boatman*, 104 Wn.2d 44, 700 P.2d 1152 (1985), the court repeated the conclusion in *Browet* that if a contempt order is punitive, the contemnor is entitled to the opportunity to be tried by a jury.

Neither *Browet* nor *Boatman* concerned direct contempt (and neither addressed proceedings under RCW 7.21).

In fact, in *Boatman*, at 48, the court expressly recognized that "[i]f the contemptible action occurs during the course of a judicial proceeding, then it may be punished summarily", under then-effective RCW 7.20.010(1), (2).

As explained in *Schaaf*, where the *Gunwall* criteria were utilized in determining whether juveniles had a right to a jury trial under the state constitution, some of the *Gunwall* criteria generally support the conclusion that the state constitution provides broader rights than does the federal constitution where the right to a jury trial is concerned. *See Schaaf*, at 13, 15-16.

However, the key in *Pasco*, and a factor of great importance in *Schaaf*, was the status of the law respecting the right to a jury trial existing at the time the state constitution was adopted. At common law as it existed when the state constitution was adopted, direct contempt could be punished summarily, without a hearing, under a constitutional court's inherent power. *See State v. Buddress*, 63 Wash. 26, 32-33, 114 P. 879 (1911) (quoting *Ex parte Terry*, 128 U.S. 289, 308-09, 32 L. Ed. 405, 9 S. Ct. 77 (1888)). " 'If the contempt be committed in the face of the court, the offender may be instantly apprehended and imprisoned, at the discretion of the judges, without any further proof or examination." *Ex parte Terry, supra* at 307 (quoting 4 William Blackstone, *Commentaries* § *286). *Ex parte Terry, supra*, was handed down the year before the Washington State Constitution was adopted. In *In re Willis*, 94 Wash.

180, 162 P. 38 (1917), the court again quoted *Ex parte Terry,* *supra,* in support of the conclusion that no constitutional right of the contemnor was invaded where the contempt occurred in the view and presence of the court and summary punishment was inflicted (including a term of imprisonment).

Moreover, under the Code of 1881, § 727, summary punishment could be imposed for direct contempt, occurring in the immediate view and presence of the court. Such punishment could include imprisonment, where the contempt consisted of "[d]isorderly, contemptuous or insolent behavior" tending to impair the court's authority or interrupting proceedings; where the contempt consisted of "[a] breach of the peace, boisterous conduct or violent disturbance tending to interrupt" proceedings; or where it appeared that the contemptuous conduct defeated or prejudiced the right or remedy of a party to an action, suit or proceeding. Code of 1881, §§ 1, 2, 726. Though imprisonment could be imposed for direct contempt, no jury trial was required.

Thus, under the law existing in the territory when the state constitution was adopted, no absolute right to trial by jury was afforded in the case of direct contempt.

Another of the *Gunwall* criteria also favors a holding that the state constitution is not more protective of the right to trial by jury in this context. The State points out that in *State v. Caffrey,* 70 Wn.2d 120, 422 P.2d 307 (1966), the court upheld a summarily imposed sanction of 10 days in jail for a direct contempt. As noted, a summarily imposed jail sanction was upheld in *In re Willis, supra,* as well. In *State v. Zioncheck,* 171 Wash. 388, 393, 18 P.2d 35 (1933), the court said:

> It is, of course, necessary to the orderly presentation of causes that the trial court have power to punish summarily for a contempt committed in its presence. In such cases, the party against whom the charge of contempt is laid is not entitled to a trial by jury, nor may he submit the question of whether or not he was guilty of contempt to some other tribunal for determination.

(Citations omitted.) Thus, preexisting case law indicates no state constitutional right to trial by jury in the case of direct contempt.

Appellant argues, however, that there is a distinction drawn in the cases between remedial sanctions, where the contemnor has the opportunity to purge the contempt, and punitive sanctions, where a determinate, punitive sanction is imposed without any opportunity for purging the contempt. *E.g., Keller v. Keller*, 52 Wn.2d 84, 323 P.2d 231 (1958); *State v. Browet, Inc., supra.* Where a punitive sanction is imposed, Appellant argues, a jury trial is always required.

This court's cases do not ultimately support Appellant. In discussing the right to trial by jury, none declares a right to trial by jury in the case of direct contempt. *Browet* and *Boatman* both cite *Pasco. Pasco*'s analysis is founded on the law as it existed when the constitution was adopted. As the historical discussion above shows, Appellant's argument fails to consider the underpinnings of the decision in *Pasco.*[7]

Appellant argues, though, that the Court in *Bloom v. Illinois*, 391 U.S. 194, 20 L. Ed. 2d 522, 88 S. Ct. 1477 (1968) concluded the historical evidence of whether a jury trial is required in contempt cases is ambiguous, and the Court held that a jury trial is required in a contempt proceeding in every instance where it would be required in a criminal trial. Then, Appellant reasons, the Washington Constitution is more protective of the right to a jury trial, and therefore a jury trial should be afforded in every contempt proceeding in which a fixed prison sentence could be imposed.

In *Bloom* the Court was concerned with whether "criminal contempt cases" could be tried without a jury. *Bloom*, at 195. The Court acknowledged that until 1964 it had "consistently upheld the constitutional power of the state and federal courts to punish any criminal contempt without a jury

---

[7]To the extent *State v. Heiner*, 29 Wn. App. 193, 627 P.2d 983, *review denied*, 97 Wn.2d 1009 (1981) may be read as inconsistent with our analysis herein, it is disapproved.

trial." *Bloom*, at 195-96. In *Bloom*, the Court departed from that extensive body of precedent. During the course of its analysis, the Court engaged in a historical survey, which included discussion of commentators who challenged the notion that by " 'immemorial usage' " all criminal contempts could be tried summarily. *Bloom*, at 198 n.2. The Court then said that it "[did] not find the history of criminal contempt sufficiently simple or unambiguous to rest rejection of [its] prior decisions entirely on historical grounds . . .". *Bloom*, at 198 n.2. The Court then said that "[i]n any event, the ultimate question is not whether the traditional doctrine is historically correct but whether the rule that criminal contempts are never entitled to a jury trial is a necessary or an acceptable construction of the Constitution." *Bloom*, at 198 n.2.

For at least two reasons, Appellant's argument based upon *Bloom* is not compelling. First, whatever the historical antecedents of summary contempt proceedings may have been, it is clear that by the time the Washington State Constitution was adopted, the common law was that direct contempt was summarily punishable without a jury trial. *See Ex parte Terry, supra; Bloom*, at 198 n.2. Second, our purpose is to resolve the jury trial question under the state constitution, which of course is an issue the Court in *Bloom* did not address.

We conclude that Appellant had no state constitutional right to trial by jury.

Because we uphold the order of contempt under RCW 7.21.050, we do not reach the question whether the order may be upheld as an exercise of the trial court's inherent authority to impose contempt sanctions.

Finally, Appellant maintains that the trial court abused its discretion by holding him in contempt, and urges that the trial court should have directed the State to grant him immunity for any use of testimony regarding any use of an alias. Appellant also says the trial court should have stricken his testimony rather than hold him in contempt. These arguments are without merit.

Affirmed.

DURHAM, C.J., DOLLIVER, SMITH, GUY, and MADSEN, JJ., and ANDERSEN, J. Pro Tem., concur.

UTTER, J. (dissenting) — I must dissent, inasmuch as I can not agree that the trial court's brief recitation complies with the requirements of RCW 7.21.050. The statute requires the judge to certify that he saw or heard the contempt. RCW 7.21.050(1). As noted by the majority, the only writing which might constitute the judge's certification is the order, which recites Appellant's "failure to respond to questions propounded during trial in this cause".

There is no express certification that the contempt was seen or heard by the judge. The only fact set forth in the order is the failure to respond to questions asked during trial. While it might be inferred that a refusal to answer questions would necessarily be in the court's presence, *In re Stewart*, 121 Wash. 429, 209 P. 849 (1922) does not support that the recitation here was sufficient. In *Stewart*, the court in dicta addresses sufficiency of effectual recitation in an order of contempt under the statute requiring that facts be set forth in the contempt order. There a witness claimed the privilege not to answer on the grounds of self-incrimination. The court in dicta said the recitation of facts that the witness refused to answer questions propounded to her when directed to do so by the court was sufficient. In addition to that discussion being dicta, the degree of detail in the order in *Stewart* is greater than here. For example, the present order does not say that the refusal followed the judge's direction to answer, as it did in *Stewart*.

In *State v. Buddress*, 63 Wash. 26, 114 P. 879 (1911), the court stated that, "the orderly administration of justice makes it indispensable that the facts found by the court shall be conclusive in a judgment for contempt committed in the presence of the court. If the facts found show jurisdic-

tion and are sufficient in law to constitute contempt, further inquiry is foreclosed." *Buddress*, 63 Wash. at 34.

RCW 7.21.050(1) clearly states the facts must appear in the order. Inasmuch as the order did not say that refusal followed the judge's direction to answer, I believe it does not clearly show that Appellant's refusal to answer was without authority of law, and therefore contempt under RCW 7.21.010(1)(c). These requirements are not onerous and should be strictly complied with.

Having concluded that the court failed to comply with the summary sanction statute, the question must still be answered whether the contempt order is justified under the court's inherent powers as a constitutional court. I believe it is not. The rule is established that a court cannot resort to inherent power to punish or remedy contempt unless the statutory remedies are inadequate in a particular case. *State ex rel. Herron v. Browet, Inc.*, 103 Wn.2d 215, 218, 691 P.2d 571 (1984). Had the statute been properly followed, the remedy provided would have been adequate for this particular case. Therefore, exercise of the court's inherent power would not lie.

For these reasons, I would reverse the sentence of contempt.

JOHNSON, J., concurs with UTTER, J.