[No. 23542-4-III.   Division Three.   January 12, 2006.]

*In the Matter of the Marriage of* MICHELLE R. DAVISSON, *Appellant,* and WILLIS BRIAN DAVISSON, *Respondent.*

*David J. Crouse*, for appellant.
*Karen S. Lindholdt*, for respondent.

¶1 BROWN, J. — Michelle R. Davisson and her former husband, Willis B. Davisson, were to co-parent under their parenting plan, with joint education and religious decision-making and required mediation for dispute resolution. Over Mr. Davisson's objection, Ms. Davisson enrolled the parties' son in a religion-based preschool. On Mr. Davisson's mo-

tion, the trial court held Ms. Davisson in contempt for failure to follow the parenting plan mediation provisions. Ms. Davisson appealed. We affirm.

## FACTS

¶2 When the parties dissolved their marriage in September 2002, their parenting plan specified joint custody plus joint decision-making on educational and religious upbringing issues. The plan requires mediation for resolving disputes on issues requiring joint decision-making.

¶3 The parties used two Spokane area daycare providers, Christy Peck and Little Learners. In June 2004, Ms. Peck gave notice that she was no longer going to provide daycare services. The parties could not agree on replacement daycare. On the last day of Ms. Peck's service, Ms. Davisson's attorney wrote a letter to Mr. Davisson's attorney expressing Ms. Davisson's unilateral desire to place their son at Challenger Christian Day School in Post Falls, Idaho. Mr. Davisson objected, but Ms. Davisson enrolled their son anyway.

¶4 Mr. Davisson initiated contempt proceedings under RCW 26.09.160, arguing Ms. Davisson's enrollment of their son at Challenger violated their parenting plan's joint decision-making provision regarding education and religious upbringing. The trial court found Ms. Davisson in contempt of the parenting plan for failing to follow the plan's mediation requirements. The court found she "intentionally failed to comply with a lawful order of the court." Clerk's Papers (CP) at 41. In the court's oral ruling, the judge stated she did not "know the religion of these parents, but this daycare is clearly Christian." Report of Proceedings (RP) at 17. Without specifically finding bad faith, the court found the violation "willful." RP at 17. This appeal followed.

## ANALYSIS

¶5 The issue is whether the trial court erred in finding Ms. Davisson in contempt for noncompliance with the parties' parenting plan.

■ ¶6 We review a trial court's decision on contempt for an abuse of discretion. *In re Marriage of James*, 79 Wn. App. 436, 439-40, 903 P.2d 470 (1995). Discretion is abused if the court's exercise of discretion was based on untenable grounds or untenable reasons. *Id.* at 440.

■ ■ ¶7 In reviewing a contempt finding, we look for facts constituting a plain order violation and strictly construe the order. *In re Marriage of Humphreys*, 79 Wn. App. 596, 599, 903 P.2d 1012 (1995). A contempt finding will be upheld on review if we find the order is supported by a " 'proper basis.' " *State v. Hobble*, 126 Wn.2d 283, 292, 892 P.2d 85 (1995) (quoting *State v. Boatman*, 104 Wn.2d 44, 46, 700 P.2d 1152 (1985)).

■ ¶8 Ms. Davisson initially contends the court erred in not making a finding of bad faith to support its contempt order. RCW 26.09.160(2)(b) requires the court to find a parent in contempt after it has found the parent has in "bad faith" failed to comply with the parenting plan. In *James*, Division One of this court addressed whether a specific finding of bad faith was required. It held, "both the judicial concern for the rights of contemnors and [RCW 26-.09.160(2)(b)] support a requirement that the trial court make a specific finding of bad faith *or intentional misconduct* as a predicate for its contempt judgment." *James*, 79 Wn. App. at 440 (emphasis added). While the court here did not make a specific finding of bad faith, it correctly reasoned Ms. Davisson "intentionally failed to comply with a lawful order of the court." CP at 41. The finding is sufficient under RCW 26.09.160(2)(b) and *James*.

¶9 Next, Ms. Davisson contends the court erred because placing their son at Challenger did not require joint-decision making. She argues the day school is not an educational school, nor contrary to the parties' religious beliefs. Thus, she reasons, she did not intentionally fail to comply with the parenting plan. While the parties' son is now in kindergarten, this record does not show if Ms.

Davisson planned to continue their son at Challenger. And while Ms. Davisson could purge her contempt by participating in mediation, the court did assess $250 in attorney fees against her. For these reasons, although the ultimate issue may be moot, we next analyze Ms. Davisson's joint decision-making concerns.

¶10 Under the terms of the parenting plan, "Educational decisions" and "Religious upbringing" are considered major decisions and must be made jointly. CP at 7. If a dispute occurs, the parties must first mediate the dispute.

¶11 Here, the record supports the court's finding of the religious nature of Challenger. Challenger describes itself as a Christian school, caring for and educating children in a "Godly atmosphere." CP at 21. Irrespective of whether Challenger is a school or a daycare, it is clearly a Christian facility with Christian teachings incorporated into its curriculum. Even if both parties share Christian beliefs, the choice of placing their son in a religious school relates to his education and religious upbringing. Strictly construing the 2002 order, this decision was to be made jointly or, if disputed, submitted to mediation. Ms. Davisson's unilateral decision to place their son at Challenger over Mr. Davisson's objection violated the joint decision-making provision of the parties' parenting plan.

¶12 Ms. Davisson next contends she did not willfully fail to comply with the parenting plan because she had her attorney notify Mr. Davisson's attorney before she enrolled their son at Challenger, and she believed her choice did not require joint approval. "Parents are deemed to have the ability to comply with orders establishing residential provisions and the burden is on a noncomplying parent to establish by a preponderance of the evidence that he or she lacked the ability to comply with the residential provisions of a court-ordered parenting plan or had a reasonable excuse for noncompliance." *In re Marriage of Rideout*, 150 Wn.2d 337, 352-53, 77 P.3d 1174 (2003).

¶13 If the trial court finds that a parent has " 'not complied with the order establishing residential provisions'

of a parenting plan in 'bad faith,' the court 'shall find' the parent in contempt of court." *Rideout*, 150 Wn.2d at 349 (quoting RCW 26.09.160(2)(b)). "[A] parent who refuses to comply with duties imposed by a parenting plan is considered to have acted in 'bad faith.' " *Id.* at 352 (citing RCW 26-.09.160(1)). In this context, we review the trial court's findings of fact to determine whether they were supported by substantial evidence and then determine whether the findings support the conclusions of law. *Id.* at 350.

¶14 Relying on *In re Marriage of Humphreys*, Ms. Davisson argues her actions did not demonstrate an intentional disobedience of a court order. In *Humphreys*, this court affirmed the trial court's refusal to hold Mr. Humphreys in contempt for taking his daughter to church without her mother's consent. *Humphreys*, 79 Wn. App. at 599. In holding the trial court acted within its discretion, this court stated: "Because the express directive requiring the mother's consent before the father could take Erin to church was removed from the amended order of September 6, 1994, Judge Donohue could reasonably conclude the order was ambiguous and the father's actions did not constitute contempt." *Id.*

¶15 Unlike the order in *Humphreys*, the order here is not ambiguous because it plainly grants both Ms. Davisson and Mr. Davisson joint decision-making regarding educational and religious upbringing issues. Even assuming Challenger is a daycare and not an educational facility, it is clearly religious in nature. Mr. Davisson specifically objected to Challenger before Ms. Davisson's placement of their son there. Although Ms. Davisson argues Mr. Davisson was more concerned with his inconvenience in traveling to Post Falls to pick up their son, substantial evidence supports the trial court's finding that Ms. Davisson intentionally disobeyed the parties' parenting plan.

¶16 We decline the parties' invitation to distinguish a preschool from a daycare center, reasoning whether preschool selection requires joint decision-making seeks a

disfavored advisory opinion. *Dickens v. Alliance Analytical Labs., L.L.C.*, 127 Wn. App. 433, 443, 111 P.3d 889 (2005). Our review is limited to whether substantial evidence supports the trial court's finding of an intentional violation of the 2002 order. We have resolved this question against Ms. Davisson. Therefore, the trial court did not err.

¶17 Mr. Davisson requests attorney fees and costs on appeal under RAP 14.1. This section relates solely to costs. As the prevailing party, Mr. Davisson is entitled to his costs under RAP 14.2, but attorney fees are denied.

¶18 Affirmed.

SWEENEY, A.C.J., and SCHULTHEIS, J., concur.

Review denied at 158 Wn.2d 1004 (2006).