[No. 8535–2–I.   Division One.   May 4, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. JEAN PAUL HEINER, *Defendant,* ARTHUR A. ANDERSON, *Appellant.*

*Hamersley S. Wright,* for appellant.

*David F. Thiele, Prosecuting Attorney,* and *David Jamieson, Jr., Deputy,* for respondent.

SWANSON, J.—Appellant, Arthur A. Anderson, appeals from an order finding him in direct contempt of court and sentencing him to a 6-month jail term for refusing to testify at the criminal trial of Jean Paul Heiner. Heiner was charged with burglary and theft, for which Anderson had been convicted previously of the lesser included offense of criminal trespass.

Before being called as a prosecution witness at Heiner's trial on December 6, 1979, Anderson obtained a court appointed attorney to advise him. The trial judge then swore him as a witness at the trial and granted him immunity except for prosecution for failure to testify or for perjury. The judge informed Anderson of the penalty under RCW 7.20 if Anderson refused to testify. Anderson gave his name and address, but he refused to answer questions in defiance of the judge's express order to answer. The judge then summarily found Anderson in contempt of court for refusing to answer questions as directed by court order. The judge also found the failure to answer appeared to prejudice the rights of the State as required by RCW 7.20-.020 to impose a jail sentence for nondisruptive behavior. He then imposed a penalty of 6 months in the county jail to

commence after Anderson's release from federal prison. Immediately thereafter, Heiner's trial concluded.

In this appeal, Anderson does not question the finding that his conduct in refusing to answer questions after having been granted immunity constitutes contempt of court, but he does challenge the trial court's authority to sentence him summarily to 6 months in jail for civil contempt under RCW 7.20, based solely on his refusal to testify. Because Anderson essentially contends that the trial court exceeded its authority and proceeded erroneously, a review of the applicable statutes and cases is necessary.

██ Washington has three types of contempt proceedings:

> (1) the criminal contempt prosecution under RCW 9.23-.010, (2) the civil contempt initiated under RCW 7.20, and (3) the inherent contempt power of a constitutional court (a) to punish conduct occurring in the court's presence, (b) to enforce orders or judgments in aid of the court's jurisdiction, and (c) to punish violations of orders or judgments. *Keller v. Keller,* 52 Wn.2d 84, 86, 323 P.2d 231 (1958).

(Footnote omitted.) *State v. Ralph Williams' N.W. Chrysler Plymouth, Inc.,* 87 Wn.2d 327, 335, 553 P.2d 442 (1976). Whatever original distinctions once existed among these three contempt categories have unfortunately become obscured. As our Supreme Court recognized in *Keller v. Keller,* 52 Wn.2d 84, 88, 323 P.2d 231 (1958):

> In a large measure, this court is responsible for a certain amount of confusion, because we have not always made plain and definite the distinction between RCW 9.23.010 and RCW 7.20.

Part of the confusion also stems from the fact that a single contemptuous act may constitute criminal, civil and inherent power of the court contempt. *Keller v. Keller, supra* at 89; *State ex rel. Dailey v. Dailey,* 164 Wash. 140, 144, 2 P.2d 79 (1931). In fact, the refusal of a witness to answer questions where required by law specifically violates both

the criminal contempt statute[1] and the civil contempt statute.[2] Such a refusal in defiance of a direct court order as happened in the present case also constitutes inherent contempt.

Although no bright line distinction has been made between civil and criminal contempt, certain fundamental differences are recognized. In *Keller v. Keller, supra* at page 88, our Supreme Court noted the basic distinctions:

> RCW 9.23.010 is a criminal statute—it is punitive; proceedings thereunder must be instituted in the name of the state by the prosecuting attorney; the accused is entitled to a jury trial.
>
> On the other hand, proceedings under RCW 7.20 may be both coercive and punitive. Although the "state is the plaintiff," proceedings may be initiated by either the prosecuting attorney or a private party, and the contemnor is not entitled to a jury trial.

Frequently, the court makes its choice of contempt proceeding solely in terms of what purpose its final order will serve. *State v. Sanchez,* 4 Wn.2d 432, 435, 104 P.2d 464 (1940). In any case, the court retains the power to punish contempt as an essential method for efficient action and for the proper administration of justice. *Blanchard v. Golden Age Brewing Co.,* 188 Wash. 396, 423, 63 P.2d 397 (1936).

In the instant case, the trial court indicated it was proceeding under the civil contempt statute, RCW 7.20, even though the final contempt order does not specifically mention this statute. Anderson argues that if the trial court did

---

[1]RCW 9.23.010 states in pertinent part:

"Every person who shall commit a contempt of court of any one of the following kinds shall be guilty of a misdemeanor:

". . .

"(6) Contumacious and unlawful refusal to be sworn as a witness or, after being sworn, to answer any legal and proper interrogatory . . ."

[2]RCW 7.20.010 states in pertinent part:

"The following acts or omissions, in respect to a court of justice or proceedings therein, are deemed to be contempts of court:

". . .

"(10) Disobedience of a subpoena duly served, or refusing to be sworn or answer as a witness."

proceed under the civil contempt statute, then the court proceeded incorrectly because the order of contempt is solely punitive. The punitive nature of the order is apparent because the punishment would not commence until Anderson completed his federal prison term. Additionally, the punishment could not coerce Anderson to testify since Heiner's trial had already concluded.

A court may use the civil contempt statute, RCW 7.20, as both a coercive and punitive remedy; but it may not use civil contempt solely as a punitive remedy. *Keller v. Keller, supra* at 88–89. *Cf. In re Estate of Harrington,* 163 Wash. 516, 519–21, 1 P.2d 850 (1931) (contempt proceeding to punish attorney for disobedience of court's order requiring attorney to restore money to estate was criminal and punitive in nature and had to be brought in name of the State pursuant to RCW 7.20.060). The main thrust of the civil contempt statute is to coerce rather than to punish. *In re Salvesen,* 78 Wn.2d 41, 43, 469 P.2d 898 (1970). Thus, any proceeding under the civil contempt statute must seek a coercive, remedial punishment to compel compliance. *See In re Parent,* 112 Wash. 620, 626, 192 P. 947 (1920); *State ex rel. Geiger v. Geiger,* 20 Wash. 181, 182–83, 54 P. 1129 (1898); *see also Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 441–43, 55 L. Ed. 797, 31 S. Ct. 492 (1911). Consequently, imprisonment imposed under the civil contempt statute must also include a coercive remedy whereby the contemnor is imprisoned only until he or she complies with the relevant court order. Therefore, the imposition of a fixed term of imprisonment pursuant to the civil contempt statute is improper where the contemnor is given no opportunity to purge the contempt through compliance. *See McDaniel v. McDaniel,* 256 Md. 684, 262 A.2d 52, 55–56 (1970) and cases cited therein; 17 Am. Jur. 2d *Contempt* § 111 (1964); 17 C.J.S. *Contempt* § 93 (1963). Such a contempt proceeding with only punishment as its purpose cannot retain its intended civil character, becoming instead a punitive criminal contempt proceeding. *See Keller v. Keller, supra* at 88–89. As a result, the trial court could not

impose the fixed term 6–month punitive sentence on Anderson under the civil contempt statute, RCW 7.20.

Anderson also correctly contends that the contempt judgment cannot be sustained as a criminal contempt proceeding pursuant to RCW 9.23.010. In a criminal contempt proceeding, the State must file an information or complaint against the contemnor and then proceed as in any criminal case, with the accused contemnor then entitled to a jury trial. *State v. Boren,* 42 Wn.2d 155, 253 P.2d 939 (1953). Again, quite clearly, the trial court did not proceed according to the criminal contempt statute although it could have done so to impose a punitive remedy.

■ Finally, we must consider if the trial court's order of contempt can be sustained under its inherent powers of contempt, for we must uphold the trial court as long as a proper basis can be found even though the trial court did not rely on that particular theory. A court of general jurisdiction has inherent power to punish for contempt—a power which the legislature cannot abridge. *Deskins v. Waldt,* 81 Wn.2d 1, 499 P.2d 206 (1972); *State v. Estill,* 55 Wn.2d 576, 579–81, 349 P.2d 210, 89 A.L.R.2d 1251 (1960); *Blanchard v. Golden Age Brewing Co.,* 188 Wash. 396, 63 P.2d 397 (1936); *Johnston v. Beneficial Management Corp. of America,* 26 Wn. App. 671, 675, 614 P.2d 661 (1980). Judges of constitutional courts have the inherent power (1) to punish summarily contemptuous conduct occurring in the presence of the court, (2) to enforce orders or judgments in aid of the court's jurisdiction, and (3) to punish violations of orders or judgments. *Keller v. Keller, supra* at 86; *see Deskins v. Waldt, supra; State v. Caffrey,* 70 Wn.2d 120, 122, 422 P.2d 307 (1966). The punishment available under the inherent power of contempt should at least equal that available under the civil contempt statute, RCW 7.20.020.[3] *See Keller v. Keller, supra* at 90.

In the instant case, it was difficult for the trial court to fashion a coercive remedy to punish Anderson in that the

---

[3]RCW 7.20.020 provides for punishment as follows:

trial concluded shortly after Anderson's refusal to testify. But as we have discussed above, the trial court could have proceeded to fashion a punitive remedy under the criminal contempt statute. In two recent cases, *Mead School Dist. 354 v. Mead Educ. Ass'n,* 85 Wn.2d 278, 287, 534 P.2d 561 (1975), and *State v. Ralph Williams' N.W. Chrysler Plymouth, Inc.,* 87 Wn.2d 327, 336, 553 P.2d 442 (1976), our Supreme Court has indicated that a court should not resort to its inherent contempt authority unless the statutory contempt provisions are inadequate. This reluctance to invoke inherent contempt powers was explained in *Mead School Dist. 354 v. Mead Educ. Ass'n, supra* at page 287:

> The trial court did not find, and respondent does not argue, that the $100 limitation of RCW 7.20.020 would impair the court's contempt power in this case. In the absence of such a finding it was not necessary for the court to resort to its inherent, rather than statutory, contempt authority. The proceedings below were, in all particulars except the severity of the sentences imposed, consistent with the requirements of RCW 7.20. In such circumstances, to allow trial courts to choose to deviate from the statutory scheme and revert to inherent power in a single aspect of a case would effectively nullify the statutes. Unless the legislatively prescribed procedures and remedies are specifically found inadequate, courts should adhere to them and are not free to create their own.

(Citations omitted.)

In *State v. Ralph Williams' N.W. Chrysler Plymouth, Inc., supra,* the Supreme Court upheld the imposition of coercive sanctions of a continuing fine of $100 per day under the trial court's inherent power of contempt even though the trial court did not specifically find that the

---

"Every court of justice, and every judicial officer has power to punish contempt by fine or imprisonment, or both. But such fine shall not exceed three hundred dollars, nor the imprisonment six months; and when the contempt is not of those mentioned in RCW 7.20.010(1) and (2), it must appear that the right or remedy of a party to an action, suit or proceeding was defeated or prejudiced thereby, before the contempt can be punished otherwise than by a fine not exceeding one hundred dollars."

maximum fines in RCW 7.20.020 impaired the court's contempt power. The court distinguished the *Mead* case which concerned a punitive contempt order, declaring the fundamental purpose of the contempt order in *Ralph Williams* was to coerce compliance with a restitution order. The court simply took judicial notice that the statutory maximum fine of $300 generally would not coerce compliance. It therefore held that the trial court did not have to make a finding that the maximum penalty provided in the civil contempt statute impaired the court's contempt powers. Thus, the Supreme Court upheld the trial court's exercise of its inherent coercive power to enforce orders or judgments in aid of the court's jurisdiction, which was not limited by the $300 maximum fine.

In the instant case, however, the trial court found it necessary to exercise its power to punish for contempt. It could then have proceeded under the criminal contempt statute. The criminal contempt statute includes a maximum penalty for a misdemeanor conviction of imprisonment in the county jail for not more than 90 days or of a $250 fine. RCW 9.92.030. There is no indication that such a penalty would not have been adequate, for it carries with it the additional sanction of a criminal conviction. In the absence of a finding that the penalty provided under the statutory authority is inadequate, we cannot assume that the trial court was acting under its inherent power.

To recapitulate our holding, the imposition of a fixed punishment to commence in the future transformed the intended civil contempt proceeding under RCW 7.20 into criminal contempt. However, the trial court did not proceed in the manner required to uphold a conviction under the criminal contempt statute. Because the trial court made no finding that the remedy provided by the statutory contempt authority was inadequate or impaired the court's contempt power, as required by *Mead School Dist. 354 v. Mead Educ. Ass'n, supra* at page 287, the judgment of con-

tempt must be reversed.

ANDERSEN and DURHAM, JJ., concur.

Reconsideration denied July 6, 1981.

Review denied by Supreme Court October 22, 1981.