[No. 9055-4-II.  Division Two.  June 23, 1986.]

*In the Matter of the Marriage of* BARTON L. KING, *Respondent, and* CHERYL L. GARDNER, *Appellant.*

*Cheryl L. Gardner,* pro se.

*Barton L. King,* pro se.

ALEXANDER, J.—Cheryl Gardner appeals from a Pierce County court commissioner's imposition of a 10-day jail sentence for contempt of court, and the granting to Gardner's former husband, Barton L. King, certain visitation with their minor child. We reverse the contempt order, insofar as it imposes a jail sentence, and affirm the grant of visitation.

The background of this case is extremely difficult to ascertain due to the inadequacy of the record provided to us by the parties. Foremost among the defects in the record is the absence of the decree of dissolution of marriage. Despite the fact that this proceeding relates to the enforcement of rights and obligations flowing from the decree, the decree and order subsequently modifying it have not been furnished to this court. However, with some difficulty we have reviewed the record that we have, the briefs of the parties, and their oral arguments, and find that we are able to glean a sufficient outline of the facts to permit us to resolve the issues on appeal.

It appears undisputed that Cheryl Gardner and Barton King's marriage ended after a decree of dissolution of marriage was entered by the Whatcom County Superior Court

on July 22, 1983. Custody of the couple's child, Jonathan, was awarded to Gardner, and King was allowed visitation with their child. On January 3, 1985, Whatcom County Superior Court modified the decree to provide King with specific rights of visitation. The court also ordered Gardner to change Jonathan's surname from Gardner to King.

On May 24, 1985, venue of the case having been transferred to Pierce County, a court commissioner entered an order finding Gardner in contempt of court for "willfully frustrating and interfering . . ." with King's visitation with Jonathan. The commissioner sentenced Gardner to 30 days in jail for her contempt, but allowed her to purge herself of the contempt by "adhering strictly to the ordered visitation . . ." and by "promptly effecting the name change . . ."

In August, after another hearing, the same commissioner again found Gardner in contempt and on August 8 entered an order sentencing her to jail for 10 of the 30 days previously ordered to be served. The order recited in its preamble that Gardner "intentionally frustrated and interfered with Court ordered visitation, . . ." The commissioner's order provided that she again be permitted to purge herself of part of the contempt sentence, thus avoiding service of the other 20 days in jail, by effecting the name change and cooperating with the visitation schedule. Finally, the order provided King with a 2-hour visitation on August 6 and a 3-week visitation beginning on August 8. According to the order, Gardner was to present the child for visitation on those two occasions, and then report to jail to serve the 10-day sentence.[1] Gardner twice moved for reconsideration and the motions were denied.[2]

---

[1]The contempt order has been stayed by order, first of the Pierce County Superior Court, and subsequently by order of the commissioner of this court.

[2]The facts outlined briefly in this opinion present merely the tip of the legal iceberg in this case. Our review of the lengthy record, which we note is largely irrelevant to the issues on appeal, discloses an almost endless succession of court appearances by the parties through the years. These court appearances have given Gardner and King ample opportunity to carry on their acrimonious relationship in a public setting. The issues that have occupied their time and the time of court

Although somewhat inartfully stated, Gardner's first assignment of error is a challenge to the validity of the court commissioner's order of contempt, imposing a 10-day jail term. She contends that her imprisonment for contempt is not lawful because she was offered no opportunity to purge herself of the contempt, and thus, obtain her release from jail. King counters by arguing that after the initial 30-day sentence was imposed, Gardner was given an opportunity to purge herself of the contempt, and did not do so. He maintains, therefore, that the court may now impose the determinate 10-day sentence.

Although we have not been asked to disturb the commissioner's finding of contempt, we agree with Gardner that the 10-day jail sentence, in the form in which it was imposed, was unlawful. In Washington, three categories of contempt proceedings exist. First, the civil contempt statute, RCW 7.20, may be utilized to coerce defendants into compliance with court orders. In such a case, a person may be imprisoned until he or she performs an act which is in his or her power to perform. RCW 7.20.110. Second, the criminal contempt statute, RCW 9.23, makes violations of court orders misdemeanors. If, however, the proceeding is criminal, criminal safeguards apply. *Bloom v. Illinois,* 391 U.S. 194, 20 L. Ed. 2d 522, 88 S. Ct. 1477 (1968); *State v. Browet, Inc.,* 103 Wn.2d 215, 691 P.2d 571 (1984). Unless the right is waived, a jury is required in every case of criminal contempt. *State v. Boren,* 42 Wn.2d 155, 253 P.2d 939 (1953). Finally, the trial court, in certain instances, may resort to its inherent power to punish or remedy contempt. A court may not, however, utilize its inherent power unless the statutory remedies are found to be inadequate in a particular case. *Mead Sch. Dist. 354 v. Mead Educ. Ass'n,* 85 Wn.2d 278, 288, 534 P.2d 561 (1975).

---

have been, for the most part, of a nature such that they would be better resolved between the parties without court intervention. Unfortunately, it appears that, as the debate between mother and father has become more pronounced with each legal battle, Jonathan's substantial stake in these proceedings has become but a minor backdrop to the developing drama between his parents.

■ In this case, the superior court commissioner imposed a determinate sentence of 10 days. Although the commissioner may have felt that he was proceeding under the civil contempt statute, "[t]he character of a contempt is determined by the purpose of the proceeding and the purpose of the sanction imposed." *State v. Browet, Inc.,* at 218. A proceeding, having a purpose that is solely punitive, and which results in a determinate jail sentence with no opportunity for a defendant to purge the contempt and thus be released from jail, does not constitute civil contempt. The civil contempt statute has been interpreted to allow only indeterminate sentences, never solely punitive fixed jail terms. *State v. Heiner,* 29 Wn. App. 193, 627 P.2d 983 (1981). Here, the penalty was clearly punitive. Gardner was ordered to serve 10 days in jail and she could not obtain her release from jail by cooperating with visitation. In fact, she was not even to begin serving the 10–day sentence until after the ordered visitation was to take place. She had, therefore, no opportunity to obtain her freedom by complying with the court's order even though it was within her power to do so. The character of the contempt here is clearly criminal. Because the court did not observe criminal safeguards, the sentence was unlawful.[3]

It may be argued that the remedies afforded by the civil contempt statute are inadequate in this case. Gardner apparently was unwilling to abide by the court's earlier order, and indeed did not purge herself of the first contempt. To allow her to avoid a determinate sentence based on the hope or even her promise that she will now abide by the court's order, could render the court's orders ineffective. We recognize the potential for an individual so inclined to frustrate the authority of the court, particularly if she is given repeated opportunities to purge the contempt in spite

---

[3]An order imprisoning Gardner until she took appropriate steps to comply with the court's order of visitation would clearly be within the trial court's authority under the civil contempt statute, provided, however, that the imprisonment did not prevent her from complying with the court's order and that the imprisonment did not exceed the statutory maximum. RCW 7.20.020.

of previous disobedience of the court's lawful orders. Although we do not believe that Gardner's actions to this point reveal such an inclination, we are concerned about the court's authority being undermined. However, in a case where the civil contempt remedies are inadequate, criminal contempt is available. Also, a trial court may, in certain cases, resort to its inherent power in order to fashion a punitive remedy appropriate to the case. In the latter instance the court should make a finding that the statutory remedies are inadequate. *Mead Sch. Dist. 354 v. Mead Educ. Ass'n, supra.* The court made no such finding in this case. In the absence of such a finding, we cannot, as did the court in *State v. Ralph Williams' North West Chrysler Plymouth, Inc.,* 87 Wn.2d 327, 553 P.2d 442 (1976),[4] take judicial notice that the statutory remedies are inadequate.

Gardner has also assigned error to what she claims was a modification of the visitation provisions of the decree by the court commissioner. Again it is difficult to ascertain precisely what Gardner's position is in this regard, particularly because we have not been favored with a copy of the decree that she claims was modified by the commissioner's order. It appears, however, that she is asserting that the court commissioner modified the decree, without a proper hearing, when it granted King the 3–week visitation that was scheduled to begin on August 8. We do not believe that the commissioner's order constituted a modification of the decree. It appears from the transcript of the commissioner's ruling that the ordered 3–week visitation was not an enlargement of King's visitation rights. Instead, the order appears to grant to King visitation to which he was entitled under a previous order, but had not received due to Gardner's actions. The granting of a "make–up" visitation does not, in our judgment, constitute a modification of the dissolution decree. Consequently, the commissioner did not err

---

[4]In the *Williams* case, the court simply took judicial notice that the statutory maximum fee of $300 generally would not *coerce* compliance and approved a continuing fine of $100 per day.

in this regard.[5]

We reverse the court commissioner's order, insofar as the 10–day jail sentence is imposed and affirm it in all other respects.

PETRICH, J., concurs.

WORSWICK, C.J. (concurring)—I do not agree that Gardner's actions do not reveal an inclination to frustrate the authority of the court. To the contrary, I am satisfied that once she sees the inside of a jail, the activity on this file will decline sharply. However, I concur in the result because a series of cases culminating in *State v. Boatman,* 104 Wn.2d 44, 700 P.2d 1152 (1985) requires a trial court to frame these orders in a certain way in order to have them pass appellate muster. This is not hard to do, but all judicial officers dealing with these matters should read the cases carefully to assure that it is done right.

Reconsideration denied July 31, 1986.

---

[5]The visitation order has not been stayed. We do not know, therefore, whether or not King's 3–week visitation has taken place. If it has already transpired, this second issue would be moot.