IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37131-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| FREDDY MUÑOZ RAZO, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — A jury found Freddy Muñoz Razo guilty of attempted murder in the first degree and kidnapping in the first degree. In a statement of additional grounds (SAG), Muñoz Razo challenges his conviction, but we reject his challenge. Muñoz Razo primarily appeals his sentence and contends the sentencing court erroneously included three California convictions in his offender score. Because one of those convictions entailed a conviction under a recidivist statute and because two of the convictions lack comparability with the elements required under Washington criminal statutes, we agree with Muñoz Razo. We remand for lowering Muñoz Razo's offender score and for resentencing.

FACTS

This appeal arises from the conviction of Freddy Muñoz Razo for the June 1, 2016 attempted murder and miraculous survival of Amy McGee.

Amy McGee served as a confidential informant for the United States Drug Enforcement Agency (DEA), after the DEA apprehended her transporting drugs from Pasco to Missoula, Montana. At the time of her shooting, she resided in Yakima with Brian Murphy. Murphy and McGee used unlawful drugs together. McGee's friend, Brandon Honeycutt, nicknamed "Rome," also dwelled at Murphy's house. Report of Proceedings (RP) at 295. A fourth person, Danette Garcia, periodically visited the home and met Amy McGee.

In late May 2016, Amy McGee met two men, Freddy Muñoz Razo and Daniel Perez, in Brian Murphy's house, although she did not then learn their respective names. Danette Garcia also saw Perez and Muñoz Razo at Murphy's house.

On the night of May 31, as Amy McGee walked from Brian Murphy's house, Freddy Muñoz Razo and Daniel Perez appeared in a sport utility vehicle (SUV). RP 297, 327. Muñoz Razo and Perez forcibly pushed McGee into the SUV. McGee still did not know the name of either of her hijackers. For several hours, the three drove in the SUV while Muñoz Razo and Perez sought someone that owed the men money for drugs. Although frightened, McGee did not then conclude that Muñoz Razo and Perez wanted to harm her. She concluded the duo, being under the influence of drugs, were angry and

2

"thinking weird thoughts." RP at 299. Muñoz Razo and Perez eventually returned to Murphy's home, where McGee fixed the men breakfast in an attempt to deescalate her condition of peril.

After breakfast on June 1, Amy McGee, presumably without the knowledge of Freddy Muñoz Razo and Daniel Perez, phoned a person named Rydell. Rydell retrieved McGee and ferried her to a DEA office, where McGee spoke with DEA agents, Manny Almaguer and Brian Frederickson, about her nocturnal and frightful travel with the two men, whose names she still lacked. The two DEA agents accompanied McGee to the Yakima Police Department, where McGee spoke with a detective.

While at the Yakima Police Department, Amy McGee worried about the presence of a man inside the police station, and she left the station on foot. While McGee walked on a city sidewalk, Freddy Muñoz Razo, Daniel Perez, and Brandon Honeycutt, in a SUV, approached McGee. Muñoz Razo drove the vehicle. The three men were cranky and nervous. McGee voluntarily entered the SUV, and the group journeyed to Brian Murphy's house. Danette Garcia saw Perez, Muñoz Razo, and Honeycutt present at the house that day.

Once at Brian Murphy's residence, Amy McGee entered Murphy's back shed. Freddy Muñoz Razo followed McGee. Muñoz Razo said to McGee, "I'm sorry; I'm so sorry," before proceeding to continuously punch McGee. RP at 303. Muñoz Razo wore gloves or other material enveloping his hands while punching McGee. Muñoz Razo next

3

repeatedly hit McGee with a pillowcase containing rocks. McGee screamed for Muñoz Razo to stop. RP at 303. McGee heard a cracking noise when Muñoz Razo struck her with the bag of rocks, and she assumed a tooth broke.

Freddy Muñoz Razo, Daniel Perez, and Brandon Honeycutt forced Amy McGee once again into the SUV. Muñoz Razo drove the quartet toward Wapato and stopped the SUV "in the middle of nowhere." RP at 305. Muñoz Razo later restarted the SUV and continued driving.

During the drive, Freddy Muñoz Razo's cell phone fell from his pocket and dropped behind his seat. Amy McGee retrieved the phone and called 911. McGee held the cell phone near her without saying anything, but Muñoz Razo heard the 911 operator ask, "what is your emergency." RP at 308. Muñoz Razo grabbed the phone and removed its battery.

The three men transported Amy McGee to a remote woody area. Daniel Perez grabbed her by the back of her shirt and forcibly removed her from the SUV. Perez, Freddy Muñoz Razo, and Brandon Honeycutt walked McGee from the vehicle. The three men stood in a line with McGee in front. At the direction of the trio, McGee knelt on her hands and knees with her head facing the ground. Perez instructed Honeycutt, who held a gun: "okay, do it." RP at 309. Honeycutt trembled and remarked that he could not pull the trigger. Muñoz Razo seized the gun from Honeycutt and stood behind McGee with his hand on the trigger. Muñoz Razo also halted from firing the gun. Perez uttered "fuck

4

this," grabbed the weapon from Muñoz Razo, and discharged a bullet into the back of McGee's head. RP at 310.

After being shot, Amy McGee acted as if dead. She held her breath and held still while the men poked and kicked her. After the men left, McGee wandered incoherently while seeking assistance.

On June 6, 2016, five days after the shooting, Yakima County Sheriff Deputy Wes Rasmussen was dispatched to an address in Wapato. At the location, Deputy Rasmussen found McGee lying naked under a tree. Rasmussen contacted medical support. Medical personnel transported McGee to a hospital in Toppenish. McGee told a first responder that she had walked for days.

Detective John Duggan met with Amy McGee several times while she convalesced in the hospital. Detective Duggan learned McGee's version of the events and arranged photomontages to identify the men that kidnapped and attempted to murder her. McGee positively identified Daniel Perez in the photomontage.

After Detective John Duggan suspected Brandon Honeycutt as a suspect, Honeycutt voluntarily provided a recorded statement. Honeycutt confirmed Amy McGee's story. Honeycutt only knew Daniel Perez as "D," but identified Perez from a photomontage. Honeycutt, however, did not know Freddy Muñoz Razo's identity.

During Detective John Duggan's investigation, he concluded that Freddy Muñoz Razo may be the unidentified suspect in the crime. Amy McGee identified Muñoz Razo

5

in a photomontage.  Duggan sent the photos to a DEA agent in Montana, and the agent

showed the photos to McGee.

## PROCEDURE

The State of Washington charged Freddy Muñoz Razo with one count of

attempted murder in the first degree, with a firearm enhancement, and one count of

kidnapping in the first degree.  The State alleged that Muñoz Razo, either acting as a

principal or an accomplice, intentionally abducted and shot Amy McGee.

At trial, Amy McGee positively identified Freddy Muñoz Razo as one of the men

who abducted her and was present during her shooting.  Danette Garcia, the occasional

visitor to Brian Murphy's residence, testified: "Like I said, I believe this [Muñoz Razo] is

the gentleman but he does look different from when I did see him," three years earlier.

RP at 374.

After the State rested its case, Freddy Muñoz Razo moved for dismissal due to

insufficient evidence.  The trial court denied the motion.

Freddy Muñoz Razo called Gail Brown, Strand Apples' general manager, to

testify.  Brown, who was in charge of Strand Apples' employment records, averred that

Muñoz Razo worked for Strand Apples.  Brown stated that Muñoz Razo had worked on

May 31, 2016 and June 2, 2016 through June 4, 2016.  Brown's records did not reflect

that Muñoz Razo worked on June 1, 2016, the day of Amy McGee's shooting.

The defense also called Brandon Honeycutt to testify.  Honeycutt stated that he

6

vaguely remembered June 1, 2016.  He recalled being handed a gun to shoot Amy

McGee, but he said, "no, I'm not doing it."  RP at 423.  Honeycutt positively identified

Freddy Muñoz Razo as the third suspect involved in the crime against McGee.

The jury found Freddy Muñoz Razo guilty of first degree attempted murder and

first degree kidnapping.  The jury also found that Muñoz Razo committed attempted

murder with a firearm.

At sentencing, Freddy Muñoz Razo objected to his counsel's continued

representation due to purported ineffective assistance provided during trial.  The trial

court responded:

> The court finds that the strategy and tactics utilized by the defense in
> this case do not demonstrate ineffective assistance of counsel.  In this
> court's opinion, it just demonstrates that you were simply encumbered by
> the facts, substantial evidence that would establish beyond a reasonable
> doubt that you were a participant in this heinous act.  The jury so found
> that.  The fact that the jury found you guilty of kidnapping and attempted
> first degree murder is not a sufficient basis to make a claim of ineffective
> assistance of counsel.
> The evidence is overwhelming to support that jury verdict.  In this
> case, your claim of ineffective assistance of counsel fails also because you
> have failed to show that it prejudiced you in any fashion.

RP at 504.  The trial court denied Muñoz Razo's request for a new trial, based on

ineffective assistance of counsel, and his request for new counsel at sentencing.

During the sentencing phase of the case, Freddy Muñoz Razo requested an

interpreter for the first time.  Defense counsel then commented:

> during the course of my representation of Mr. Munoz-Razo,

7

language was never an issue that came up. I asked him before the trial if he would feel more comfortable with an interpreter, and he said no. He felt like he could understand everything and could proceed through trial without an interpreter.

RP at 508. The trial court concluded that Muñoz Razo could understand the evidence presented at trial.

During sentencing, the State listed twelve past convictions, all of which Freddy Muñoz Razo garnered in California. Of the twelve convictions, the State requested that the trial court count eight of them toward Muñoz Razo's offender score. RP 508. The eight convictions included:

| Crime | Date of Sentence | Date of Crime |
|---|---|---|
| Taking a vehicle without consent | September 11, 2012 | August 28, 2012 |
| Accessing account information without consent | September 11, 2012 | August 28, 2012 |
| Possession of a blank check (forgery) | September 11, 2012 | August 28, 2012 |
| Receiving known stolen property | September 11, 2012 | August 28, 2012 |
| Theft of an automobile with a prior conviction for taking a vehicle without consent | September 11, 2012 | August 28, 2012 |
| Perjury | January 17, 2003 | January 13, 2003 |
| Possession of marijuana for sale | June 11, 1996 | May 31, 2996 |
| Taking a vehicle without consent | September 15, 1995 | August 16, 1995 |

The State argued that California's receiving known stolen property statute was comparable to Washington's identity theft statute. The State also argued that California's

forgery statute was comparable to Washington's forgery statute.

Defense counsel did not receive the State's sentencing memorandum until the Friday before the Monday sentencing hearing. Defense counsel did not request a continuance. Defense counsel also did not submit a sentencing memorandum or mitigating evidence on Freddy Muñoz Razo's behalf. Finally, defense counsel did not object to or argue against the State's position that Muñoz Razo's prior convictions were comparable to Washington offenses.

Freddy Muñoz Razo objected to the inclusion of two of the listed convictions on the basis that the State wrongfully attributed the crimes to him. He argued that, as a result of authorities changing his California Department of Corrections inmate code several times, California mistakenly listed him as the party being convicted. When questioned by the court, defense counsel acknowledged that the certified documents contained nothing to support Muñoz Razo's contention.

During the sentencing hearing, Freddy Muñoz Razo denied kidnapping or attempting to murder Amy McGee. Muñoz Razo expressed sympathy for Amy McGee and her family and added that he would die if one of his daughters suffered a tragedy like McGee's tragedy. He requested compassion from the court. Defense counsel requested that the trial court sentence Muñoz Razo at the bottom of the range, because Muñoz Razo was not the primary actor and his criminal record included only stale, theft-related convictions, as opposed to violent ones.

9

The sentencing court agreed with the State that all eight of Freddy Muñoz Razo's prior California convictions were comparable to Washington offenses. The court scored each prior conviction as one point. Thus, the court found Muñoz Razo's offender score to be eight. The trial court did not, however, annunciate any comparability analysis. With an offender score of eight, Muñoz Razo faced a standard range of 277.5 to 369.75 months' confinement on the first degree attempted murder charge and 51 to 68 months' confinement on the first degree kidnapping charge.

The sentencing court found the heinousness of the crime, Freddy Muñoz Razo's lack of respect for human life, the overwhelming evidence against Muñoz Razo, and his beating of Amy McGee before kidnapping her as aggravating factors. The court commented: "I have searched diligently for mitigating factors in this case, and I can't find any." RP at 530.

The sentencing court sentenced Freddy Muñoz Razo at the top of the range on both counts, imposing 369.75 months' confinement for the attempted murder and 68 months' for the kidnapping. The trial court imposed an additional 60 months' confinement based on the firearm enhancement on the attempted murder charge. In total, the trial court sentenced Muñoz Razo to 497.75 months' confinement.

LAW AND ANALYSIS

On appeal, Freddy Muñoz Razo seeks to lower his sentence by reducing his offender score by three points. He contends that the counting of three California crimes

10

in his offender score violated Washington law because one of the crimes was a recidivist crime and two of the California crimes lack any comparable Washington crime. We agree.

Recidivist Crime

On appeal, Freddy Muñoz Razo argues that the trial court miscalculated his offender score by including one point based on a California conviction that does not qualify as a substantive crime because the conviction arose from a recidivist sentencing statute. Muñoz Razo refers to and challenges the inclusion of his California theft of an automobile with a prior conviction for taking a vehicle without consent conviction. The State concedes that Freddy Muñoz Razo's theft of an automobile with a prior conviction for taking a vehicle should not count toward his offender score. The State agrees with Muñoz Razo that this court should remand for resentencing and lower his offender score from eight to seven. We accept the State's concession.

Pursuant to the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, a standard range sentence is determined by an offender score and offense seriousness level. RCW 9.94A.510; RCW 9.94A.530(1). An offender score is the sum of points an offender accrues from prior convictions rounded down to the nearest whole number. RCW 9.94A.525. Prior class A, B, and C felony convictions and certain prior gross misdemeanor convictions are included in the offender score. RCW 9.94A.525(2)(a)-(g).

11

This court reviews a sentencing court's calculation of a defendant's offender score de novo. *State v. Olsen*, 180 Wn.2d 468, 472, 325 P.3d 187 (2014). A sentence based on an incorrect offender score is a fundamental defect that inherently results in a miscarriage of justice. *State v. Wilson*, 170 Wn.2d 682, 688-89, 244 P.3d 950 (2010).

CAL. VEHICLE CODE § 10851(a) governs the substantive crime of theft and unlawful driving or taking of a vehicle. The statute declares:

> Any person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle, or any person who is a party or an accessory to or an accomplice in the driving or unauthorized taking or stealing, is guilty of a public offense and, upon conviction thereof, shall be punished by imprisonment in a county jail for not more than one year or pursuant to subdivision (h) of Section 1170 of the Penal Code or by a fine of not more than five thousand dollars ($5,000), or by both the fine and imprisonment.

If an individual convicted of taking a vehicle without consent is subsequently convicted of the same offense later, he or she is punished under a recidivist statute, CAL. PENAL CODE § 666.5. This second California statute reads, in relevant part:

> (a) Every person who, having been previously convicted of a felony violation of Section 10851 of the Vehicle Code, or [other offenses] . . . regardless of whether or not the person actually served a prior prison term for those offenses, is subsequently convicted of any of these offenses shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years, or a fine of ten thousand dollars ($10,000), or both the fine and the imprisonment.

Before Freddy Muñoz Razo's 2012 convictions, the California Court of Appeal held that CAL. PENAL CODE § 666.5 "creates only enhanced punishment for repeat offenders, not a new substantive offense." *People v. Young*, 234 Cal. App. 3d 111, 115, 285 Cal. Rptr. 583 (1991). Since Muñoz Razo's conviction, the California Court of Appeal has clarified:

> Section 666.5 is an alternate punishment scheme that prescribes an elevated sentencing for recidivist car thieves. . . . Section 666.5 does not define a new offense and it is not an enhancement; it simply increases the punishment for the crime.

*People v. Lee*, 16 Cal. App. 5th 861, 869-70, 224 Cal. Rptr. 3d 706 (2017).

On September 11, 2012, Freddy Muñoz Razo pled, in California court, nolo contendere to a violation of CAL. PENAL CODE § 666.5(a). This conviction arose because California previously convicted Muñoz Razo of taking a vehicle without consent on September 15, 1995 pursuant to CAL. VEHICLE CODE § 10851(a). Freddy Muñoz Razo's conviction for theft of an automobile with a prior conviction is not a substantive crime. *People v. Lee*, 16 Cal. App. 5th 861, 869-70 (2017); *People v. Young*, 234 Cal. App. 3d 111, 115 (1991). Thus, this conviction is neither a prior felony nor a gross misdemeanor countable toward an offender score. RCW 9.94A.525(2)(a)-(g). The sentencing court committed legal error when scoring the conviction. Therefore, we remand to recalculate the offender score and to resentence Muñoz Razo.

13

Receiving Stolen Property Comparability

Freddy Muñoz Razo also asserts that two of his California convictions, receiving known stolen property and forgery, are neither legally nor factually comparable to Washington offenses. Accordingly, Muñoz Razo requests that this court remand for resentencing without the resentencing court scoring either of these convictions. Excluding the two convictions would reduce Muñoz Razo's offender score to five. The State responds that both of these crimes are comparable to one or more Washington statutes and, thus, were properly counted toward Muñoz Razo's offender score. The State also highlights that Muñoz Razo waived his right to challenge the California convictions' comparability. We first address the California conviction of receiving stolen property.

The State contends that Freddy Muñoz Razo waived his right to challenge the comparability of the California crime of receiving stolen property because he stipulated, before the sentencing court, to the conviction and did not object to the conviction's inclusion in his offender score. This same argument and our analysis in response applies to the comparability of the California crime of forgery.

A sentence is excessive if based on a miscalculated offender score. *In re Personal Restraint of Goodwin*, 146 Wn.2d 861, 873, 50 P.3d 618 (2002). A defendant cannot agree to punishment in excess of the punishment established by the legislature. *In re Personal Restraint of Goodwin*, 146 Wn.2d 861, 873-74 (2002). Accordingly, a

14

defendant cannot usually waive a challenge to a miscalculated offender score if the sentencing error is a legal one. *In re Personal Restraint of Goodwin*, 146 Wn.2d at 873-74. Waiver may arise if the alleged error involves a defendant's agreement to facts or involves matters of a sentencing court's discretion. *In re Personal Restraint of Goodwin*, 146 Wn.2d at 874.

Freddy Muñoz Razo does not argue that the trial court's alleged miscalculation of his offender score arose from either his stipulation to facts or matters involving the sentencing court's discretion. Rather, Muñoz Razo contends that the court's comparability analysis was legally incorrect. Accordingly, Muñoz Razo did not waive his challenges to his miscalculated offender score on appeal.

"Out-of-state convictions for offenses shall be classified according to the comparable offense definitions and sentences provided by Washington law." RCW 9.94A.525(3). The foreign offense must be compared to a Washington statute in effect when the individual committed the foreign crime. *State v. Morley*, 134 Wn.2d 588, 606, 952 P.2d 167 (1998). The State bears the burden of establishing the comparability of out-of-state convictions. *State v. Ford*, 137 Wn.2d 472, 479-80, 973 P.2d 452 (1999). If a prior foreign conviction is not comparable, the trial court may not count the conviction toward the offender score. *State v. Thiefault*, 160 Wn.2d 409, 415, 158 P.3d 580 (2007).

Washington law employs a two-part test to determine the comparability of a foreign offense. *State v. Thiefault*, 160 Wn.2d 409, 415 (2007). First, the court analyzes legal comparability by determining whether the elements of the foreign offense are substantially similar to the elements of the Washington offense. *State v. Thiefault*, 160 Wn.2d 409, 415. Second, if the foreign offense's elements are broader than the Washington offense's elements, courts analyze factual comparability by determining whether the conduct underlying the foreign offense would have violated the comparable Washington statute. *State v. Thiefault*, 160 Wn.2d at 415. When determining factual comparability, the sentencing court may rely on facts in the foreign court's record that are admitted, stipulated to, or proved beyond a reasonable doubt. *State v. Thiefault*, 160 Wn.2d at 415. When a foreign statute is broader than Washington's statute, factual comparability analysis may not be possible because the defendant lacked any incentive to prove that he did not commit the narrower offense. *In re Personal Restraint of Lavery*, 154 Wn.2d 249, 257, 111 P.3d 837 (2005).

The State argues that California's receiving stolen property statute compares with Washington's identity theft statute and Washington's trafficking in stolen property statute. We first address the comparability with the Washington identity theft crime.

CAL. PENAL CODE § 496 governs the California offense of receiving stolen property. The California statute declares, in relevant part:

16

(a) Every person who buys or receives any property that has been
stolen or that has been obtained in any manner constituting theft or
extortion, knowing the property to be so stolen or obtained, or who
conceals, sells, withholds, or aids in concealing, selling, or withholding any
property from the owner, knowing the property to be so stolen or obtained,
shall be punished by imprisonment.

Washington's identity theft statute, RCW 9.35.020, reads, in pertinent part:

(1) No person may knowingly obtain, possess, use, or transfer a
means of identification or financial information of another person, living or
dead, with the intent to commit, or to aid or abet, any crime.

RCW 9.35.005 defines "financial information" for purposes of RCW 9.35.020 as:

(1) "Financial information" means any of the following information
identifiable to the individual that concerns the amount and conditions of an
individual's assets, liabilities, or credit:
(a) Account numbers and balances;
(b) Transactional information concerning an account; and
(c) Codes, passwords, social security numbers, tax identification
numbers, driver's license or permit numbers, state identicard numbers
issued by the department of licensing, and other information held for the
purpose of account access or transaction initiation.

We compare the elements of California's crime of receiving stolen property with

Washington's crime of identity theft. Under CAL. PENAL CODE § 496, California

criminalizes possessing *any* wrongfully-obtained property, while Washington, under

RCW 9.35.020(1), only criminalizes the possession of "a means of identification or

financial information." Unlike California, Washington requires that the victim of the

theft be an actual, real person, as opposed to a legal entity. *State v. Fedorov*, 181 Wn.

App. 187, 194, 324 P.3d 784 (2014). Finally, Washington requires more than mere

17

possession, use, or transfer of property; it also requires that an individual have the "intent to commit, or to aid or abet, any crime." RCW 9.35.020(1). Under CAL. PENAL CODE § 496, on the other hand, an individual may be convicted simply for possessing stolen property. Intent to commit a crime is not required.

In short, one could commit the California crime of receiving stolen property and not commit the Washington crime of identity theft based on the same conduct. Because California's elements are broader than Washington's elements, the two crimes lack comparability.

Because the California crime of receiving stolen property does not compare with the Washington crime of identity theft, we must next determine whether the crime committed by Freddy Muñoz Razo in California factually fulfills the elements of the Washington crime of identity theft. Freddy Muñoz Razo pled nolo contendere to his California conviction. In California, the effect of a no contest plea is the same as that of a guilty plea. *People v. Wallace*, 33 Cal. 4th 738, 749, 93 P.3d 1037, 16 Cal. Rprtr. 3d 96 (2004). A guilty plea admits each element of the charged crime. *People v. Wallace*, 33 Cal. 4th at 749.

The California charging instrument declared, in relevant part, that Freddy Muñoz Razo:

> did unlawfully buy, receive, conceal, sell, withhold, and aid in concealing, selling, and withholding property, to wit, MISC CHECKS,

> which had been stolen and obtained by extortion, knowing that said
> property had been stolen and obtained by extortion.

CP at 106. Thus, the California complaint narrowed the factual allegations to the taking of financial instruments.

Freddy Muñoz Razo argues that he did not admit that the miscellaneous checks that became the subject of the California charges were either "a means of identification or financial information of another person," a critical element of the Washington crime of identity theft. RCW 9.35.020(1). Muñoz Razo further argues that the State of Washington did not prove beyond a reasonable doubt that the California purloined checks included information concerning account numbers and balances, transactional information concerning an account, codes, passwords, or other information held for the purpose of account access or transaction initiation, another element under the Washington identity theft statute. RCW 9.35.020(1)(a)-(c). Finally, he asserts that the California record lacks evidence that he intended to commit a crime other than possession, another element of identity theft under RCW 9.35.020(1).

The State characterizes Freddy Muñoz Razo's argument as absurd because if the checks he pled guilty to possessing did not bear financial information, they would be a blank piece of paper. The State of Washington argues that, if the miscellaneous checks contained no financial information, California would not have charged him with a felony conviction based on possessing stolen worthless papers.

19

We do not address whether the California checks must exhibit financial

information, because we can rest our decision on another basis. The State did not prove

that the miscellaneous checks belonged to a specific, actual person, as required by *State*

*v. Fedorov*, 181 Wn. App. 187, 194 (2014), or that Muñoz Razo possessed the checks

with the intent to commit a further crime. Therefore, we conclude that the conceded facts

from the California prosecution for receiving stolen property do not necessarily fulfill all

elements of the Washington crime of identity theft.

We now compare the California statute creating the crime of receiving stolen

property with Washington's criminal statute of trafficking in stolen property. We already

quoted the California statute. The Washington statute declares:

> (1) A person who knowingly initiates, organizes, plans, finances, directs, manages, or supervises the theft of property for sale to others, or who knowingly traffics in stolen property, is guilty of trafficking in stolen property in the first degree.

RCW 9A.82.050. Washington's definition of "traffic" is found in RCW 9A.82.010(19):

> "Traffic" means to sell, transfer, distribute, dispense, or otherwise dispose of stolen property to another person, or to buy, receive, possess, or obtain control of stolen property, with intent to sell, transfer, distribute, dispense, or otherwise dispose of the property to another person.

RCW 9A.82.050 criminalizes possessing stolen property, but requires that the

accused also intend to "sell, transfer, distribute, dispense, or otherwise dispose of the

property to another person." RCW 9A.82.010(19). In California, an individual may be

guilty of simply possessing property he or she knows to be stolen, without considering

20

whether the individual intended to transfer the stolen property to another. A person could be convicted of receiving stolen property pursuant to CAL. PENAL CODE § 496 without being convicted under RCW 9A.82.050. Therefore, the two statutes lack comparison.

This court must also assess whether the California crime committed by Freddy Muñoz Razo fulfills the elements of the Washington crime of trafficking in stolen property. Neither the California information nor any other evidence the State of Washington forwarded establishes that Muñoz Razo intended to sell or otherwise transfer the miscellaneous checks to another person. Nor did Muñoz Razo stipulate to such facts when he pled guilty. The State thus failed to carry its burden in proving the necessary Washington elements beyond a reasonable doubt.

After a wearying analysis, we conclude that the California crime of receiving stolen property does not legally compare to any Washington crime. We also conclude that the conduct of Freddy Muñoz Razo, when committing the California crime, did not factually complete the elements of any Washington crime. Therefore, on remand, the resentencing court should not include the California crime in Muñoz Razo's offender score.

Forgery Comparability

Freddy Muñoz Razo's sentencing court scored Muñoz Razo's conviction of forgery in California as one point toward Muñoz Razo's offender score. On appeal, as it did before the sentencing court, the State of Washington contends that California's

forgery statute is comparable to Washington's forgery statute.

CAL. PENAL CODE § 475 governs the offense of forgery. The statute declares, in

relevant part:

> (b) Every person who possesses any blank or unfinished check, note,
> bank bill, money order, or traveler's check, whether real or fictitious, with
> the intention of completing the same or the intention of facilitating the
> completion of the same, in order to defraud any person, is guilty of forgery.

Washington's forgery statute, RCW 9A.60.020, proclaims, in pertinent part:

> (1) A person is guilty of forgery if, with intent to injure or defraud:
> (a) He or she falsely makes, completes, or alters a written instrument
> or;
> (b) He or she possesses, utters, offers, disposes of, or puts off as true
> a written instrument which he or she knows to be forged.

"Falsely make" is defined in RCW 9A.60.010:

> (5) To "falsely make" a written instrument means to make or draw a
> complete or incomplete written instrument which purports to be authentic,
> but which is not authentic either because the ostensible maker is fictitious
> or because, if real, he or she did not authorize the making or drawing
> thereof;

Washington's forgery provision expressly requires proof that the accused either:

(1) falsely made, completed, or altered a written instrument, or (2) possessed a written

instrument while knowing it to be forged. RCW 9A.60.020(1)(a)-(b). CAL. PENAL CODE

§ 475(b) criminalizes simple possession of a blank and unfinished check or other written

instrument, if the accused intended to complete or facilitate the completion of the

instrument. Therefore, a person could be convicted of forgery pursuant to CAL. PENAL

CODE § 475(b) without being convicted of forgery under RCW 9A.60.020(1). Because

California's elements are broader than Washington's elements, the California statute does

not legally compare to RCW 9A.60.020(1).

We must also assess whether the undisputed facts of Freddy Muñoz Razo's

California crime of forgery qualify for a conviction under the Washington statute

prohibiting forgery. Muñoz Razo pled no contest to his CAL. PENAL CODE § 475(b)

conviction, and thus admitted to each element of the charged crime. *People v. Wallace*,

33 Cal. 4th 738, 749 (2004). The California information read that Freddy Muñoz Razo:

> possessed a blank and unfinished check, note, bank bill, money
> order, and traveler's check with the intention of completing the same and
> the intention of facilitating the completion of the same, in order to defraud a
> person.

CP at 107.

Based on the charges brought by the State of California, Freddy Muñoz Razo

contends that he did not admit that he made, completed, or altered a written statement,

nor that he knew the written material to be falsely made, completed, or altered. Muñoz

Razo argues that the State of Washington failed to present any documentation that proved

either of these facts beyond a reasonable doubt. We agree with Muñoz Razo. On

remand, the resentencing court should exclude, in the offender score calculation, the

California crime of forgery.

Ineffective Assistance of Counsel

Freddy Muñoz Razo asserts that trial defense counsel provided ineffective assistance at his sentencing hearing by (1) not sufficiently preparing, (2) not objecting to the sentencing court's treatment of Muñoz Razo's past convictions as comparable offenses, (3) waiving Muñoz Razo's ability to argue that some of his past convictions qualified as the same criminal conduct, (4) taking positions contrary to Muñoz Razo's interests, and (5) not presenting mitigating evidence. Muñoz Razo requests that this court remand for resentencing. We decline to address this assignment of error since we have already declared the need for resentencing. Although Muñoz Razo does not identify any mitigating information for his sentencing that trial counsel should have tendered, counsel may present any such information on remand. Muñoz Razo may also argue, during resentencing, that some of his past convictions constituted the same criminal conduct.

STATEMENT OF ADDITIONAL GROUNDS

Freddy Muñoz Razo forwards multiple assignments of error in his SAG. We reject all of them.

Cross-Examination

Freddy Muñoz Razo asserts that the trial court denied him his constitutional right to confront witnesses against him by disallowing his cross-examination of Brandon Honeycutt about the latter's diagnosed schizophrenia and the symptoms resulting from

24

the mental disorder. Muñoz Razo claims the questioning would have detracted from Honeycutt's credibility and led to a different trial outcome.

During direct examination of Brandon Honeycutt, Freddy Muñoz Razo's counsel asked, "Do you have any mental health problems?" and "Are you on any medications, Mr. Honeycutt?" RP at 430. On both occasions, the State objected and the trial court sustained because the questions were beyond the scope of examination.

Freddy Muñoz Razo, not the State, called Brandon Honeycutt to testify. RP 408. Thus, the trial court should not have excluded the testimony based on the questioning involving a subject beyond subjects explored by the State during its questioning. The evidence was still inadmissible for another reason. The court of appeals must uphold the trial court as long as a proper basis can be found even though the trial court did not rely on that particular theory. *State v. Heiner*, 29 Wn. App. 193, 198, 627 P.2d 983 (1981).

In *State v. Froehlich*, 96 Wn.2d 301, 306-07, 635 P.2d 127 (1981), the Washington Supreme Court elucidated when a witness' testimony about his or her mental illness may be elicited:

> A witness' credibility is always at issue, but it was particularly so in this highly unusual setting. The mental defects of the witness were clearly demonstrated to the trial court and jury by the extreme state of nervousness. A review of the record made by the trial court in expressing its concerns makes it equally obvious to this court on appeal. *Where, as here, the mental disability of a witness is clearly apparent and his competency is a central issue in the case, the jury need not be left in ignorance about that condition or its consequences.*

(Emphasis added.)

Unlike the witness in *State v. Froehlich*, Brandon Honeycutt did not exhibit a nervous state. Honeycutt's mental disability was not apparent. His competence was not a central issue. At trial, defense counsel stated, after medical professionals placed Honeycutt on antipsychotic medication, "he's intelligible. You can understand him. His answers are clear." RP at 385. As the State argues, the record does not support that Honeycutt's illness affected his ability to truthfully and accurately testify about the crime.

Jury Instruction

Freddy Muñoz Razo argues that the trial court improperly allowed an erroneous jury instruction to be presented on accomplice liability. Nevertheless, Muñoz Razo did not object to the jury instruction during trial.

RAP 2.5(a) governs issues initially raised on appeal, and states, in relevant part:

> The appellate court may refuse to review any claim of error which was not raised in the trial court. However, a party may raise the following claimed errors for the first time in the appellate court: (1) lack of trial court jurisdiction, (2) failure to establish facts upon which relief can be granted, and (3) manifest error affecting a constitutional right.

Freddy Muñoz Razo waived his challenge to the jury instruction.

Identification Procedures

Freddy Muñoz Razo contends that law enforcement, when conducting the photomontages, engaged in an unfair identification procedure that violated his constitutional rights. He challenges the photomontage which Detective John Duggan

26

arranged and DEA Agent Lee Herd presented to Amy McGee. From this photomontage, McGee positively identified Muñoz Razo.

During trial, when the State offered the photomontage into evidence, Freddy Muñoz Razo did not object. In fact, defense counsel stated that he had "no objection" to the photomontage's introduction. CP at 316. Thus, Muñoz Razo waived any error.

## Ineffective Assistance of Counsel

Finally, Freddy Muñoz Razo presents ineffective assistance of counsel arguments different from those in his appellate counsel's brief. Muñoz Razo contends that trial defense counsel inadequately investigated Muñoz Razo's locations on the date of Amy McGee's shooting, failed to interview or subpoena witnesses regarding his whereabouts, failed to produce a police report regarding a stolen vehicle around the time of McGee's shooting, only met with him a few times over the multiple years counsel represented him, and neither gave Muñoz Razo his discovery nor went over the discovery with him.

RAP 10.10 governs SAGs. The rule declares, in relevant part:

> (c) Citations; Identification of Errors. . . . Except as required in cases in which counsel files a motion to withdraw as set forth in rule 18.3(a)(2), the appellate court is not obligated to search the record in support of claims made in a defendant's statement of additional grounds for review. *Only documents that are contained in the record on review should be attached or referred to in the statement*.

(Boldface omitted) (emphasis added).

27

Any facts supporting Freddy Muñoz Razo's allegations with regard to ineffective assistance of counsel lie outside the trial court record. Thus, this court is unable to determine whether any of Muñoz Razo's contentions are true, let alone analyze whether defense counsel provided ineffective assistance on any of the alleged grounds.

CONCLUSIONS

We affirm Freddy Muñoz Razo's convictions for attempted murder in the first degree and first degree kidnapping. We hold that three California criminal convictions included in the sentencing court's offender score should be excluded. We remand to the trial court to resentence Muñoz Razo on the basis of an offender score of 5.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, A.C.J.

_____
Lawrence-Berrey, J.

28